**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| IN RE:<br><br>STEPHANIE D. BROWN,<br>Debtor | Case No. 05-12431-ANV<br>Chapter 13 |
| STEPHANIE D. BROWN,<br>Plaintiff,<br><br>v.<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and WELLS FARGO BANK, N.A., AS TRUSTEE OF THE AEGIS ASSET BACKED SECURITIES TRUST 2004-3,<br>Defendants. | A.P. No. 05-01052<br><br>CA 05 523 |

**MOTION OF MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND WELLS FARGO BANK, N.A. FOR LEAVE TO APPEAL**

Now come the Defendants, Mortgage Electronic Registration Systems, Inc. ("MERS"), and Wells Fargo Bank, N.A., as Trustee of the Aegis Asset Backed Securities Trust 2004-3 ("Wells Fargo"; together with MERS referred to collectively herein as the "Defendants"), and, pursuant to 28 U.S.C. § 158(a) and Fed. R. Bankr. P. 8001(b) and 8003, hereby move for leave to appeal the Order Denying Motion/Application (doc#17) After Hearing entered by this Court on December 7, 2005 and denying the Defendants' Motion to Compel Arbitration and/or Mediation and to Dismiss Case. As grounds therefor, the Defendants rely on the attached Memorandum filed herewith and incorporated herein by reference.

WHEREFORE, the Defendants prays that this Honorable Court grant them leave to appeal the Order entered December 7, 2005, and for such other and further relief as this Court deems just and equitable.

**In Re: Stephanie D. Brown** **Case No. 05-12431-ANV, Chapter 13**

**Stephanie D. Brown vs. Mortgage Electronic Registration Systems, Inc., et als**
**A.P. No. 05-01052**

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AND WELLS FARGO BANK, N.A., AS TRUSTEE OF THE AEGIS ASSET BACKED SECURITIES TRUST 2004-3

By their Attorneys,

PARTRIDGE, SNOW & HAHN, LLP

/s/ Charles A. Lovell
Charles A. Lovell (#4004)
180 South Main Street
Providence, RI 02903
(401)861-8200/FAX(401)861-8210
cal@psh.com

Dated: December 15, 2005

**WITHIN TEN (10) DAYS AFTER SERVICE, TWENTY (20) DAYS FOR U.S. GOVERNMENT OFFICERS AND AGENCIES THEREOF), AND AN ADDITIONAL THREE (3) DAYS PURSUANT TO FED. R. BANK P. 9006 (f) IF YOU WERE SERVED BY MAIL, ANY PARTY AGAINST WHOM THIS PAPER HAS BEEN SERVED, OR ANY OTHER PARTY TO THE ACTION WHO OBJECTS TO THE RELIEF SOUGHT THEREIN, SHALL SERVE AND FILE AN OBJECTION OR OTHER APPROPRIATE RESPONSE TO THIS PAPER WITH THE BANKRUPTCY COURT CLERK'S OFFICE, 380 WESTMINSTER STREET, 6TH FLOOR, PROVIDENCE, RHODE ISLAND 02903, (401)528-4477. IF NO OBJECTION OR OTHER RESPONSE IS TIMELY FILED WITHIN THE TIME ALLOWED HEREIN, THE PAPER WILL BE DEEMED UNOPPOSED AND WILL BE GRANTED, UNLESS (1) THE REQUESTED RELIEF IS PROHIBITED BY LAW; OR (2) THE REQUESTED RELIEF IS AGAINST PUBLIC POLICY; OR (3) IN THE OPINION OF THE COURT, THE INTEREST OF JUSTICE REQUIRES OTHERWISE.**

**In Re: Stephanie D. Brown** **Case No. 05-12431-ANV, Chapter 13**

**Stephanie D. Brown vs. Mortgage Electronic Registration Systems, Inc., et als**
**A.P. No. 05-01052**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of December, 2005, I electronically filed a Motion for Leave to Appeal and supporting Memorandum with the Clerk of the Bankruptcy Court for the District of Rhode Island using the CM/ECF System. The following participants have received notice electronically: none; and I hereby certify that a copy of the Motion was served by regular, first class mail, to the following interested parties as set forth below:

Jeffrey Dana, Esquire
RI Legal Services, Inc.
56 Pine Street, Fourth Floor
Providence, RI 02903

Ms. Stephanie D. Brown
12 Kilburn Court
Newport, RI 02840

Ms. Margaret Nicholas
12 Kilburn Court
Newport, RI 02840

/s/Debra J. Demartini

831758_1/999998-75

**In Re: Stephanie D. Brown** **Case No. 05-12431-ANV, Chapter 13**

**Stephanie D. Brown vs. Mortgage Electronic Registration Systems, Inc., et als**
**A.P. No. 05-01052**

# EXHIBIT A

Loan No: 029805520159
Borrower: MARGARET NICHO

TRUE CERTIFIED COPY

Data ID: 261

# ADJUSTABLE RATE NOTE

MIN: 100055102985201595

**(LIBOR Six-Month Index (As Published In The Wall Street Journal)—Rate Caps)**

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

May 20, 2004 — NEWPORT [City] — RHODE ISLAND [State]

12 KILBURN COURT
NEWPORT, RHODE ISLAND 02840
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **195,000.00** (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **AEGIS LENDING CORPORATION.** I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **11.089 %**. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **July 1, 2004**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **June 1, 2034**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 5208 WEST RENO, SUITE 255, OKLAHOMA CITY, OK 73127, or at a different place if required by the Note Holder.



INITIALS: ______ S.D.B.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 1,870.16. This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of **June, 2006**, and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **NINE and 839/1000** percentage points ( 9.839 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **14.0890 %** or less than **11.0890 %**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **ONE** percentage point (**1.00 %**) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than **17.0890 %** or less than **11.0890 %**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.



INITIALS:

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full prepayment after the first twelve months of the loan term, without paying any prepayment fee. If I make a full prepayment during the first twelve months of the loan term, I agree to pay a prepayment fee equal to two percent (2%) of the unpaid principal balance on the date of the prepayment. I may make a partial prepayment at any time without paying a prepayment fee.

If this Note is not in default, the Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

By accepting partial payment of any payment, Note Holder does not waive the right to collect the remainder of such payment. Acceptance of any payment after maturity, or waiver of any breach or default of the terms of this Note shall not constitute a waiver of any later or other breach or default, and failure of Note Holder to exercise any of its rights shall not constitute waiver of such rights.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Acceleration**

If I am in default, the Note Holder may without notice or demand, unless otherwise required by applicable law, require me to pay immediately the full amount of Principal that has not been paid and all interest that I owe on that amount.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees of 15.00% of the sums due under this Note or the amount allowable under applicable state law.



INITIALS: [handwritten initials] 5. D. B

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of notice of acceleration, Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
>
> To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.



INITIALS: [signature] S.D.B

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

..................................................(Seal)
MARGARET NICHOLAS —Borrower

..................................................(Seal)
STEPHANIE D BROWN —Borrower

*[Sign Original Only]*

**In Re: Stephanie D. Brown** **Case No. 05-12431-ANV, Chapter 13**

**Stephanie D. Brown vs. Mortgage Electronic Registration Systems, Inc., et als**
**A.P. No. 05-01052**

# EXHIBIT B

BK: 1491 PG: 97

Loan No: 029805520159
Borrower: MARGARET NICHOLAS

Data ID: 261

Return to: AEGIS LENDING CORPORATION
ATTENTION: LOAN SHIPPING,REG 12
P.O. BOX 84308
BATON ROUGE, LA 70884

[Space Above This Line For Recording Data]

# MORTGAGE

MIN: 100055102985201595

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated May 20, 2004, together with all Riders to this document.

**(B) "Borrower"** is MARGARET NICHOLAS AND STEPHANIE D BROWN , whose address is 80 FAIRLAWN AVE, MATTAPAN, MASSACHUSETTS 02126. Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D) "Lender"** is AEGIS LENDING CORPORATION. Lender is a Corporation organized and existing under the laws of the State of DELAWARE. Lender's address is 10049 NORTH REIGER ROAD, BATON ROUGE, LA 70809.

**(E) "Note"** means the promissory note signed by Borrower and dated May 20, 2004. The Note states that Borrower owes Lender ONE HUNDRED NINETY-FIVE THOUSAND and NO/100----Dollars (U.S. $ 195,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than June 1, 2034.

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [X] Adjustable Rate Rider
- [ ] Balloon Rider
- [X] 1-4 Family Rider
- [ ] Other(s) [specify]
- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.



0298055201590130

MN S.D.B.

Loan No: 029805520159 Data ID: 261

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property located in the Town of NEWPORT:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which currently has the address of 12 KILBURN COURT,
[Street]

NEWPORT, RHODE ISLAND 02840 ("Property Address"):
[City] [Zip Code]



S.D.B.

BK: 1491 PG: 106

Loan No: 029805520159 Data ID: 261

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Following Borrower's breach of any covenant or agreement in this Security Instrument, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees of 15.00% of the sums due under the Note or the amount allowable under applicable state law and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees of 15.00% of the sums due under the Note or the amount allowable under applicable state law; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

BK: 1491 PG: 108

Loan No: 029805520159 Data ID: 261

**Place of Arbitration.** The arbitration shall be conducted in the city nearest to Borrower's residence where a federal district court is located or at such other location as agreed by the parties.

**Cost of Arbitration.** Filing fees shall be shared equally between Lender and Borrower. All administrative fees in excess of the amount of the filing fees that would be charged for a Claim equal to your loan amount shall be paid by the requesting party. The cost of up to one (1) full day of arbitration hearings will be paid by the Lender. Fees for hearings that exceed one (1) day will be paid by the requesting party.

**Timing of Hearing.** The arbitration hearing shall commence within forty-five (45) days of the demand for arbitration.

NO CLASS ACTIONS; NO JOINDER OF PARTIES; WAIVER OF RIGHT TO JURY TRIAL. THE ARBITRATION WILL TAKE THE PLACE OF ANY COURT PROCEEDING INCLUDING A TRIAL BEFORE A JUDGE OR A JUDGE AND JURY. ANY SUCH ARBITRATION SHALL BE CONDUCTED ON AN INDIVIDUAL BASIS, AND NOT AS PART OF A COMMON OR CLASS ACTION. IT IS EXPRESSLY ACKNOWLEDGED AND AGREED BY BORROWER AND LENDER THAT ANY PURPORTED COMMON ISSUES OF LAW OR FACT SHALL BE RESOLVED ON SUCH AN INDIVIDUAL BASIS.

**Judgment.** The award rendered by the arbitrator shall be final, non-appealable and judgment may be entered upon it in accordance with Applicable Law in any court having jurisdiction thereof.

**Confidentiality.** Borrower and Lender agree that the mediation and arbitration proceedings are confidential. The information disclosed in such proceedings cannot be used for any purpose in any other proceeding.

**Claims Excluded from Mediation and Arbitration.** Notwithstanding the foregoing, neither Borrower nor Lender can require the other to mediate or arbitrate: (a) foreclosure proceedings, whether pursuant to judicial action, power of sale, assent to a decree or otherwise, proceedings pursuant to which Lender seeks a deficiency judgment, or any comparable procedures allowed under Applicable Law pursuant to which a lien holder may acquire title to or possession of any property which is security for this Transaction and any related personal property (including an assignment of rents or appointment of a receiver), upon default by the Borrower on the Transaction; (b) an application by or on behalf of the Borrower for relief under the federal bankruptcy laws or any other similar laws of general application for the relief of debtors, through the institution of appropriate proceedings; (c) any Claim where Lender seeks damages or other relief because of Borrower's default under the terms of a Transaction; (d) any Claim on which relief could be granted by the small claims court in Borrower's jurisdiction; or (e) any class action suit. Enforcement of this section will not waive the right to arbitrate any other Claim, including a Claim asserted as a counterclaim in a lawsuit brought under this section.

**Effect of Rescission.** If Borrower has the right to rescind this Transaction, rescinding it will not rescind this Agreement.

**No Other Arbitration Agreements.** This Agreement is the only agreement between Lender and Borrower regarding alternative dispute resolution, and supersedes any prior agreements to mediate or arbitrate Claims. This Agreement may only be modified by a written agreement between Lender and Borrower.

**BORROWER AND LENDER AGREE TO WAIVE ANY RIGHTS TO TRIAL BY JURY OF ANY AND ALL CLAIMS.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

.............................(Seal)
MARGARET NICHOLAS —Borrower

.............................(Seal)
STEPHANIE D BROWN —Borrower

BK: 1491 PG: 109

Loan No: 029805520159

Data ID: 261

[Space Below This Line For Acknowledgment]

State of RHODE ISLAND §
County of NEWPORT §

In NEWPORT, on the 20TH day of MAY, 2004, before me, KEITH A. HEROUX, a NOTARY PUBLIC, personally appeared the above-named

MARGARET NICHOLAS AND STEPHANIE D BROWN
personally known to me, and known to me to be the parties executing the foregoing instrument, and severally acknowledged the said instrument, by them executed, to be their free and voluntary act and deed.

(Seal)

Notary Public

KEITH A. HEROUX
(Printed Name)

My commission expires: 8-13-07

Exhibit A

BK: 1491 PG: 116

That certain lot or parcel of land with all the buildings and improvements thereon, situated on Kilburn Court, in the City of Newport, County of Newport, State of Rhode Island, bounded and described as follows:

Northeasterly partly on land now or formerly of Thomas J. Moriarity, et ux, and partly on land now or formerly, heirs or devisee of Elizabeth L. Stanhope; Southeasterly on land now or formerly of Emma I. Hail; Southwesterly on Kilburn Court; Northwesterly on land now or formerly of Charles T. Kaull, et ux; Southwesterly on land now or formerly of Charles T. Kaull, et ux; Northwesterly again on land of the Gulf Oil Corporation.

Property Address:
12 Kilburn Court
Newport, RI 02840

KATHLEEN M. SILVIA
CITY OF NEWPORT
CITY CLERK
05/21/2004 12:40:44PM
Inst# 18181

**In Re: Stephanie D. Brown** **Case No. 05-12431-ANV, Chapter 13**

**Stephanie D. Brown vs. Mortgage Electronic Registration Systems, Inc., et als**
**A.P. No. 05-01052**

# EXHIBIT C

## MEDIATION OR ARBITRATION DISCLOSURE

Disputes regarding your home loan are subject to the mediation and arbitration terms set forth in your Mortgage, Deed of Trust or Security Deed (the "Security Instrument"). Please carefully review these terms. You should be aware that any award rendered by the arbitrator shall be final, nonappealable, and judgment may be entered upon it. You may obtain a free copy of the rules by calling (800) 778-7879.

## NOTICE OF NO ORAL AGREEMENTS AND BROKER AUTHORIZATION DISCLOSURE

This Notice is made by and between undersigned Borrowers ("Borrower") and AEGIS LENDING CORPORATION ("Lender").

### I. ONLY WRITTEN LOAN AGREEMENTS

1. The rights and obligations of Borrower and Lender shall be determined solely from written Loan Agreements, and any prior oral agreements between Lender and Borrower are superseded by and merged in the Loan Agreements.

2. The Loan Agreements may not be varied by any oral agreements or discussions that occur before, contemporaneously with, or subsequent to the execution of the Loan Agreements.

3. Please note:

   THE WRITTEN LOAN AGREEMENTS REPRESENT THE FINAL AGREEMENTS BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

   THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

### II. BROKER AUTHORIZATION

In the event a Broker participated in obtaining this loan, Borrower has authorized the Broker to submit an application for a loan to Lender to be secured by Borrower's real estate and agrees to indemnify and hold Lender harmless from any and all liability for any acts or omissions by the Broker. Borrower confirms that the Broker is solely Borrower's agent and not Lender's agent and Borrower understands that the Broker has no authority to make any agreements, representations or warranties on Lender's behalf or to represent Lender in any respect. Borrower also understands the Lender is not obligated in any way to make a loan to Borrower and that Lender may accept or reject Borrower's application for a loan in Lender's sole discretion or propose terms other than those contained in Borrower's application.

Borrower represents that Borrower has received and read a copy of this Notice at or before the execution of Borrower's Loan Agreements, that Borrower has been advised by Lender to have the provisions of this Notice reviewed and explained by legal counsel, and that Borrower otherwise understands and accepts the provisions of this Notice. Borrower also represents that any fees or payments to the Lender which Borrower has made in connection with the Loan were voluntarily made only to Lender and were for necessary and reasonable fees or payments so the Loan may be closed according to standard industry practices.

Loan No: 029805520159 Data ID: 261
Borrower: MARGARET NICHOLAS

# SURVEY RECEIPT AND ACKNOWLEDGMENT WITH HOLD HARMLESS

Each of the undersigned, whether one or more, having been duly sworn, according to law, upon oath depose(s) and say(s):
That I have received and reviewed a copy of the survey (with surveyor's certificate), on the property located at

12 KILBURN COURT,
NEWPORT, RHODE ISLAND 02840

("Property"), prepared by Keith A. Heroux and dated 5/20/04 ("Survey"), and I am aware of and accept any and all encroachments, easements, limitations, conditions, and exceptions shown on the Survey. I also certify that the Survey accurately shows all improvements located on the Property.

I further certify and agree that I have no objection to and am not relying on any representations or warranties of AEGIS LENDING CORPORATION ("Lender") as to the condition of the title of the Property or the existence of any encroachments, easements, limitations, conditions, or exceptions on or to the title or the Property. Furthermore, I agree to and do hereby indemnify and hold harmless the Lender, its successors and assigns, from and against any and all claims, causes of action, demands, losses, costs, damages, and expenses (including without limitation expenses of litigation, court costs, and attorney's fees) in any way arising from or connected with the existence of the aforementioned encroachments, easements, limitations, conditions, and/or exceptions and do hereby release Lender, its successors and assigns, from any liabilities arising in any manner therefrom.

Date: 5/20/04

x [signature]
MARGARET NICHOLAS —Borrower

x [signature]
STEPHANIE D BROWN —Borrower

STATE of RHODE ISLAND §
LAND EVIDENCE of NEWPORT §

SWORN TO AND SUBSCRIBED before me on this 20TH day of MAY, 2004.

[signature]
Notary Public

KEITH HEROUX
(Printed Name)

My commission expires: 8-13-07

0298055201591085

**In Re: Stephanie D. Brown** **Case No. 05-12431-ANV, Chapter 13**

**Stephanie D. Brown vs. Mortgage Electronic Registration Systems, Inc., et als**
**A.P. No. 05-01052**

# EXHIBIT D

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| IN RE:<br><br>STEPHANIE D. BROWN,<br>Debtor | Case No. 05-12431-ANV<br>Chapter 13 |
| STEPHANIE D. BROWN,<br>Plaintiff,<br><br>v.<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and WELLS FARGO BANK, N.A., AS TRUSTEE OF THE AEGIS ASSET BACKED SECURITIES TRUST 2004-3,<br>Defendants. | A.P. No. 05-01052 |

**AMENDED MOTION OF MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AND WELLS FARGO BANK, N.A., AS TRUSTEE OF THE AEGIS ASSET BACKED SECURITIES TRUST 2004-3, TO COMPEL MEDIATION AND/OR ARBITRATION AND TO DISMISS THIS ACTION OR, IN THE ALTERNATIVE, TO STAY THE PROCEEDINGS PENDING MEDIATION OR ARBITRATION**

Now come Mortgage Electronic Registration Systems, Inc. ("MERS"), and Wells Fargo Bank, N.A., as Trustee of the Aegis Asset Backed Securities Trust 2004-3 ("Wells Fargo") and respectfully move to compel mediation and/or arbitration and dismiss the above-referenced adversary proceeding or, in the alternative, to stay the proceedings pending mediation or arbitration. In support of this Motion, MERS and Wells Fargo rely on the Memorandum of Law filed herewith.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AND WELLS FARGO BANK, N.A., AS TRUSTEE OF THE AEGIS ASSET BACKED SECURITIES TRUST 2004-3

By their Attorneys,

PARTRIDGE, SNOW & HAHN, LLP

/s/ Charles A. Lovell

Charles A. Lovell (#4004)
180 South Main Street
Providence, RI 02903
(401)861-8200/FAX(401)861-8210
cal@psh.com

Dated: November 2, 2005

**WITHIN TEN (10) DAYS AFTER SERVICE, TWENTY (20) DAYS FOR U.S. GOVERNMENT OFFICERS AND AGENCIES THEREOF), AND AN ADDITIONAL THREE (3) DAYS PURSUANT TO FED. R. BANK P. 9006 (f) IF YOU WERE SERVED BY MAIL, ANY PARTY AGAINST WHOM THIS PAPER HAS BEEN SERVED, OR ANY OTHER PARTY TO THE ACTION WHO OBJECTS TO THE RELIEF SOUGHT THEREIN, SHALL SERVE AND FILE AN OBJECTION OR OTHER APPROPRIATE RESPONSE TO THIS PAPER WITH THE BANKRUPTCY COURT CLERK'S OFFICE, 380 WESTMINSTER STREET, 6TH FLOOR, PROVIDENCE, RHODE ISLAND 02903, (401)528-4477. IF NO OBJECTION OR OTHER RESPONSE IS TIMELY FILED WITHIN THE TIME ALLOWED HEREIN, THE PAPER WILL BE DEEMED UNOPPOSED AND WILL BE GRANTED, UNLESS (1) THE REQUESTED RELIEF IS PROHIBITED BY LAW; OR (2) THE REQUESTED RELIEF IS AGAINST PUBLIC POLICY; OR (3) IN THE OPINION OF THE COURT, THE INTEREST OF JUSTICE REQUIRES OTHERWISE.**

**Stephanie D. Brown vs. Mortgage Electronic Registration Systems, Inc., et als**
**A.P. No. 05-01052**

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of November, 2005, I electronically filed an Amended Motion to Dismiss with the Clerk of the Bankruptcy Court for the District of Rhode Island using the CM/ECF System. The following participants have received notice electronically: **John Boyajian, Esquire; Leonard DePasquale, Esquire, Office of the U.S. Trustee**; and I hereby certify that a copy of the Motion was served by regular, first class mail, to the following interested parties as set forth below:

Jeffrey Dana, Esquire
RI Legal Services, Inc.
56 Pine Street, Fourth Floor
Providence, RI 02903

/s/ Debra J. Demartini

824508_1/999998-75

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| IN RE:<br><br>STEPHANIE D. BROWN,<br>Debtor | Case No. 05-12431-ANV<br>Chapter 13 |
| STEPHANIE D. BROWN,<br>Plaintiff,<br><br>v.<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and WELLS FARGO BANK, N.A., AS TRUSTEE OF THE AEGIS ASSET BACKED SECURITIES TRUST 2004-3,<br>Defendants. | A.P. No. 05-01052 |

**MEMORANDUM IN SUPPORT OF MOTION OF MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AND WELLS FARGO BANK, N.A., AS TRUSTEE OF THE AEGIS ASSET BACKED SECURITIES TRUST 2004-3, TO COMPEL MEDIATION AND/OR ARBITRATION AND TO DISMISS THIS ACTION OR, IN THE ALTERNATIVE, TO STAY THE PROCEEDINGS PENDING MEDIATION OR ARBITRATION**

Now come Mortgage Electronic Registration Systems, Inc. ("MERS"), and Wells Fargo Bank, N.A., as Trustee of the Aegis Asset Backed Securities Trust 2004-3 ("Wells Fargo") and respectfully submit this Memorandum of Law in support of their motion to compel mediation and/or arbitration and dismiss the above-referenced adversary proceeding or, in the alternative, to stay the proceedings pending mediation or arbitration.

**FACTS**

1. On May 20, 2004, Stephanie D. Brown (the "Debtor") and Margaret Nicholas ("Ms. Nicholas") (the Debtor and Ms. Nicholas are sometimes collectively referred to

as the "Borrowers") executed an Adjustable Rate Note in favor of Aegis Lending Corporation ("Aegis") in the original principal amount of $195,000 (the "Note"). A true and correct copy of the Note is attached hereto as Exhibit A.

2. To secure the repayment of the Note, the Borrowers granted MERS, as nominee for Aegis, a mortgage (the "Mortgage") on the property located at 12 Kilburn Court, Newport, Rhode Island (the "Property"). A true and correct copy of the Mortgage is attached hereto as Exhibit B.

3. Wells Fargo is the current holder of the Note.

4. Section 26 of the Mortgage provides that any disputes or controversy relating to the Note, the Mortgage or the transaction shall be subject to mediation and arbitration in accordance with the terms of that section. The Mortgage then states the express procedures for mediation and arbitration. Arbitration of the disputes is governed by the Federal Arbitration Act (the "FAA").

5. At the time of the execution of the Note and the Mortgage, the Borrowers also executed a Mediation or Arbitration Disclosure, which disclosed that "disputes regarding your home loan are subject to the mediation and arbitration terms set forth in" the Mortgage. A true and correct copy of that disclosure is attached hereto as Exhibit C.

6. On or about June 29, 2005, the Debtor filed a Chapter 13 bankruptcy petition.

7. On July 15, 2005, MERS filed a Proof of Claim asserting a secured claim in the amount of $211,314.66 (the "Proof of Claim").

8. On or about August 3, 2005, the Debtor filed an Adversary Proceeding Complaint (the "Complaint") against MERS alleging violations of the Truth-in-Lending Act

("TILA") (the "Adversary Proceeding"). In the Complaint, the Debtor seeks declaratory judgment from the Court deeming and declaring that the loan violates the disclosure requirements of TILA, deeming and declaring that the Mortgage is void and the Note wholly unsecured, deeming and declaring that the Debtor is not liable for any finance charges or other charges, and praying for an award of statutory damages and costs.

9. On August 31, 2005, MERS filed a Motion to Dismiss on the grounds that the Complaint filed to state a claim against MERS, as MERS is not the owner of the actual obligations, nor has it ever been (the "Motion to Dismiss"). The Debtor objected to the Motion to Dismiss. After hearing held on September 29, 2005, the Court denied the Motion to Dismiss, without prejudice.

10. On September 28, 2005, the Debtor filed a Motion to Amend Complaint (the "Motion to Amend") and an amended complaint naming Wells Fargo as an additional defendant. On October 26, 2005, the Court granted the Motion to Amend.

11. At no time have the parties mediated or arbitrated the disputes at issue in the Adversary Proceeding. As a result, the within Motion should be granted, this Court should compel mediation and/or arbitration and dismiss the within Adversary Proceeding or, in the alternative, should stay the proceedings pending arbitration or mediation.

**ARGUMENT**

The presumption in favor of arbitration established by the FAA "is a powerful one". Johnson v. West Suburban Bank, 225 F.3d 366, 369 (3rd Cir. 2000), cert. denied, 121 S.Ct. 1081 (2001). Further, "a party who agrees to arbitrate, but then asserts that his or her statutory claim cannot be vindicated in an arbitral forum, faces a heavy burden." Johnson, 225 F.3d at 369.

The Supreme Court of the United States has stated clearly and repeatedly that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983). More importantly, courts must "rigorously enforce agreements to arbitrate" even where it may result in piecemeal litigation." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985). Finally, in considering the arbitrability of federal statutory claims, the U.S. Supreme Court has stated that it "reject[s] generalized attacks on arbitration that rest on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants." GreenTree Financial Corp. v. Randolph, 121 S.Ct. 513, 521 (2000). In GreenTree, the court stated that "even claims arising under a statute designed to further important social policies may be arbitrated because 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum', the statute serves its functions." Id. at 521.

As a result of the strong public policy in favor of arbitration, the Courts, including the First Circuit, have explicitly upheld and enforced arbitration and mediation provisions in the context of a TILA rescission action. In Thompson v. Irwin Home Equity Corp., 300 F.3d 88, 91 (1st Cir. (R.I.) 2002), the First Circuit held that based on the clear language of the agreement, which is the identical language in the Mortgage in this case, the plaintiffs' "attempt to exercise their right to rescind does not affect [the lender's] right to have an arbitrator decide whether there are indeed grounds for rescission." The Court in Irwin held that TILA litigation "is unmistakably governed by the arbitration clause." Id. The First Circuit therefore affirmed the District Court's ruling requiring the plaintiffs to arbitrate their TILA claims against the Lender.

The First Circuit rejected the plaintiffs' argument that the attorneys' fees provision in the arbitration section of the mortgage violated and conflicted with TILA, thus preventing arbitration. The First Circuit instead again upheld the District Court, holding that "arbitration is the correct initial forum for the [plaintiffs] to air their objection to the attorney's fees provision in the arbitration agreement." Id. The court noted that if an arbitrator did improperly award attorney's fees against the plaintiffs, the district court would then be in a position to hear their argument that the challenged provision on attorney's fees is unenforceable. Id. at 92.

In a bankruptcy context, the enforcement of an arbitration clause is dependent on the nature of the proceeding, although the strong public policy in favor of arbitration must still be considered. Thus, in Larocque v. Citifinancial Mortgage Co., 283 B.R. 640, 642 (Bankr. D.R.I. 2002), this Court held that a Bankruptcy Court retains the discretion to deny or compel arbitration where two competing directives existed, namely, the FAA and the Bankruptcy Code. The court noted that "where the dispute involves an agreement containing such a clause, the first question is whether arbitration is mandatory, or whether there is discretion as to how the dispute gets adjudicated. In resolving that issue it is necessary to consider two competing federal statutes, the Federal Arbitration Act, and the Bankruptcy Code, by weighing the policy objectives of the FAA and the Bankruptcy Code, within the context of the bankruptcy case." Id. at 641-642.

As noted by this Court in Larocque, in core proceedings, such as this Adversary Proceeding, where the interest of the bankruptcy court may be greater, there may be a conflict between the Bankruptcy Code and the FAA, and so the Bankruptcy Court retains discretion to deny arbitration. See id.; In re Winimo Realty Corp., 270 B.R. 108, 118 (S.D.N.Y. 2001). There

is no dispute that the matter is a core proceeding. However, "even a determination that a proceeding is core will not automatically give the bankruptcy court discretion to stay arbitration for not all bankruptcy proceedings are premised on provisions of the Code that inherently conflict with the Federal Arbitration Act; nor would arbitration of such proceedings necessarily jeopardize the objectives of the Bankruptcy Code." Id., at 118; see also, The Singer Creditor Trust v. Akai Electric Co. Ltd. (In re The Singer Company), 2001 U.S. Dist. LEXIS 12902 (noting that by not granting the bankruptcy court exclusive jurisdiction over non-core matters, it is clear that Congress did not envision all bankruptcy related matters being adjudicated in a single forum and so even where a matter is a core proceeding, the Bankruptcy Court must determine whether the proceedings involve provisions of the Code that so inherently conflict with arbitral resolution); and In re National Gypsum Co., 118 F.3d 1056, 1067 (5th Cir. 1997) (noting that not all core matters meet the standard necessary for a court to deny arbitration).

In denying arbitration, the party seeking denial of arbitration, and the Court, must "point to a specific substantive bankruptcy right that will be negated or impaired if the matter is sent to arbitration." Durango Georgia Converting, LLC v. TST Impreso, Inc. (In re Durango Georgia Paper Co.), 309 B.R. 394, 401 (S.D. Ga. 2004). Thus, in In re The Singer Company, 2001 U.S. Dist. LEXIS at *14-15, the Court refused to deny arbitration because the adversary proceeding in that case, involving the debtor's complaint to rescind a contract, centered on "pre-petition contractual rights, obligations and conduct". The court reasoned that the matter was "a core proceeding only because it is in effect a counterclaim to the claim [the creditor] has asserted against the estate. . . Because the issues underlying the Adversary Proceeding—the parties' rights under the Agreement and whether [the creditor] performed its obligations under the Agreement—do not arise from rights conferred or obligations imposed by the Bankruptcy Court,

they do not, standing alone, present an inherent conflict between Code policy and the FAA's strong endorsement of the arbitral forum." Id.

In comparison, in United States Lines, Inc. v. American S.S. Owners Mutual Protection and Indemnity Ass'n, Inc. (In re United States Lines, Inc.), 197 F.3d 631, 638-639 (2nd Cir. 1999), cert. denied, 529 U.S. 1038 (2000), arbitration was denied because, in the absence of a bankruptcy court declaration regarding certain indemnity rights, the debtor might be forced to distribute assets in a manner inconsistent with the Bankruptcy Code's distribution provisions. Because arbitration could have resulted in a direct conflict with the Bankruptcy Code, arbitration was denied. Id. Similarly, the court in In re National Gypsum, 118 F.3d at 1069, held that "at least where the cause of action at issue was derivative of rights under the Bankruptcy Code", and "completely divorced" from pre-petition contractual rights, the Bankruptcy Court was within its discretion to deny arbitration.

In this Adversary Proceeding, a substantive bankruptcy right is not at issue and enforcement of the arbitration provision would not jeopardize the provisions of the Bankruptcy Code. The cause of action lies entirely within federal law—the TILA. The matter is a core proceeding because the outcome of the Adversary Proceeding will determine the priority and secured status of MERS' and Wells Fargo's Proof of Claim, and thus will impact other creditors of the Debtor, as in The Singer Company matter. Nevertheless, the legal, substantive issues arising in the Adversary Proceeding have absolutely nothing to do with bankruptcy law. Accordingly, there is no conflict with the FAA and the Bankruptcy Code, and this Court should compel arbitration. Enforcement of the provision would by no means "seriously jeopardize the objectives of the Bankruptcy Code." In re Winimo Realty Corp., 270 B.R. at 123. As in the In re Winimo Realty Corp. matter, the court should uphold the arbitration provision because "the

issues underlying the [proceeding] do not arise from rights conferred or obligations imposed by the Bankruptcy Code." Id. "None of these claims were created by the Bankruptcy Code; they are simply contractual claims derivative of pre-bankruptcy arrangements." Id. Similarly, the Adversary Proceeding is a federal statutory claim derivative of pre-bankruptcy contracts—the Note and the Mortgage.

In addition, arguments regarding undue expense and delay also do not provide sufficient reason to deny arbitration. In In re DurangoGeorgia Paper Co., 309 B.R. at 401, the plaintiff sought to enforce arbitration of a dispute relating to two promissory notes and a security agreement. The debtor filed an adversary proceeding seeking to avoid payment on the notes. The debtor requested that the court deny arbitration on the grounds that arbitration would cause an unnecessary expense to the debtor and would cause the debtor to incur additional expense. The Court rejected the debtor's argument and compelled arbitration. The court noted first that the adversary proceeding did not implicate a substantive bankruptcy right thereby demanding retention of the matter by the bankruptcy court, but was a general contractual dispute. See id. Moreover, the reasons given by the debtor to deny arbitration were general contractual arguments and were unrelated to the bankruptcy code. See id. Finally, the court rejected the debtor's argument about undue expense and time as arbitration is ordinarily used to avoid expensive and time-consuming litigation. See id. Likewise, in In re Winimo Realty Corp., 270 B.R. at 125, the court rejected an argument that arbitration should be denied because of the Bankruptcy Code's policy of favoring expeditious administration of the estate. The court noted that "if the presumption in favor of arbitration means anything, the mere possibility of delay cannot alone provide the Bankruptcy Court with discretion to deny arbitration." Id. Similarly, in this case, any argument by the Debtor regarding undue expense or delay should be rejected as

grounds sufficient to deny arbitration. The arbitration clause in the Mortgage should be enforced.

## CONCLUSION

For all of the foregoing reasons, MERS and Wells Fargo respectfully request that this Honorable Court grant the within Motion, compel mediation and/or arbitration, and dismiss the within Adversary Proceeding or, in the alternative, should stay the proceedings pending arbitration or mediation, and grant such other and further relief as this Court deems just and equitable.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AND WELLS FARGO BANK, N.A., AS TRUSTEE OF THE AEGIS ASSET BACKED SECURITIES TRUST 2004-3

By their Attorneys,

PARTRIDGE, SNOW & HAHN, LLP

/s/ Charles A. Lovell
Charles A. Lovell (#4004)
180 South Main Street
Providence, RI 02903
(401)861-8200/FAX(401)861-8210
cal@psh.com

Dated: November 2, 2005
824497_1

**In Re: Stephanie D. Brown** **Case No. 05-12431-ANV, Chapter 13**

**Stephanie D. Brown vs. Mortgage Electronic Registration Systems, Inc., et als**
**A.P. No. 05-01052**

# EXHIBIT E

NOV 1 6 2005

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **IN RE: STEPHANIE D. BROWN,** | **)** | **Bk. No. 05-12431** |
| **Debtor** | **)** | **Chapter 13** |
| | **)** | |
| **STEPHANIE D. BROWN, Plaintiff** | **)** | **AP No. 05-01052** |
| **v.** | **)** | |
| **MORTGAGE ELECTRONIC** | **)** | |
| **REGISTRATION SYSTEMS, INC., and** | **)** | |
| **WELLS FARGO BANK, N.A., as TRUSTEE** | **)** | |
| **Of the AEGIS ASSET BACKED SECURITIES** | **)** | |
| **TRUST 2004-3, Defendants** | **)** | |

**OBJECTION TO DEFENDANTS' MOTION TO COMPEL MEDIATION AND/OR ARBITRATION AND TO DISMISS THIS ACTION OR, IN THE ALTERNATIVE, TO STAY THE PROCEEDINGS PENDING MEDIATION OR ARBITRATION**

The Plaintiff/Debtor, Stephanie D. Brown, hereby objects to Defendants motion to compel mediation and/or arbitration and to dismiss this action or, in the alternative, to stay the proceedings pending mediation or arbitration.

In support of this Objection, the Plaintiff relies upon the Memorandum filed herewith.

Jeffrey T. Dana #5580
Attorney for Stephanie D. Brown
Rhode Island Legal Services, Inc.
56 Pine Street, 4th Floor
Providence, RI 02903
(401)-274-2652

**Certificate of Service**

I hereby certify that a copy of the Plaintif/Debtor's Objection to Defendant's Motion to Dismiss and accompanying Memorandum were mailed to John Boyajian, Esq., Boyajian, Harrington & Richardson, 182 Waterman St., Providence, RI 02906; Charles A. Lovell, Esq., Partridge, Snow & Hahn, 180 South Main Street, Providence, RI 02903 on the 15th day of November, 2005.

[signature]

NOV 1 6 2005

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **IN RE: STEPHANIE D. BROWN, Debtor** | ) | **Bk. No. 05-12431 Chapter 13** |
| | ) | |
| **STEPHANIE D. BROWN, Plaintiff** | ) | **AP No. 05-01052** |
| **v.** | ) | |
| **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and WELLS FARGO BANK, N.A., as TRUSTEE Of the AEGIS ASSET BACKED SECURITIES TRUST 2004-3, Defendants** | ) | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFANDANTS' MOTION TO TO COMPEL MEDIATION AND/OR ARBITRATION**

**INTRODUCTION**

The Defendants have moved to compel mediation and/or arbitration of the Plaintiff's statutory claims asserted in this adversary proceeding. These claims, based on the federal Truth in Lending Act (hereinafter "TILA"), have been asserted in the adversary proceeding as an objection to the Defendant's proof of claim filed in this Chapter 13 bankruptcy. The Plaintiff's adversary proceeding seeks to enforce her exercise of the extended right of rescission under TILA and to obtain a declaration that the Defendant's mortgage on her home is void.

The Bankruptcy Code provides for one forum to resolve all disputes affecting the administration of a party's bankruptcy estate, with the goal of swift adjudication of claims brought by and against the estate. In re Hemphill Bus Sales, Inc., 259 B.R. 865 (Bankr. E.D. Tex. 2001); In re Slipped Disc, Inc., 245 B.R. 342, 344 (Bankr. N.D. Iowa 2000); In re Trident Shipworks, Inc., 243 B.R. 130, 132 (Bankr. M.D. Fla. 1999). For this reason, most courts have held that even when the parties have signed an arbitration agreement, if the issue under dispute is a core proceeding in the bankruptcy, the bankruptcy court has discretion in determining whether to refuse to compel arbitration. In re United States Lines, Inc., 197 F.3d 631, 640 (2nd Cir. 1999), *see also*, In re Guild Music Corp., 100 B.R. 624 (Bankr. D.R.I. 1989)(court retains discretion to decline to enforce arbitration even as to non-core matters).

This adversary proceeding unquestionably involves a core proceeding. As a result and for the reasons stated below, this Court should exercise its discretion in favor of resolving the dispute between the parties and should determine the amount, validity and extent of the Defendants' claim and related lien.

## ARGUMENT

### I. Congress' Broad Grant Of Jurisdiction To Bankruptcy Courts Reflects A Clear Intent To Preclude A Waiver Of Judicial Remedies Under The Bankruptcy Code.

#### A. The Conflict Between the Bankruptcy Code and the Federal Arbitration Act Must Be Resolved In Favor of Bankruptcy Court's Retaining Discretion to Reject Arbitration Enforcement.

A motion to compel arbitration raised in a bankruptcy proceeding brings into conflict two federal statutes: the Federal Arbitration Act (FAA) and the Bankruptcy

Code. The FAA requires that where a valid and enforceable arbitration agreement exists, courts should halt their proceedings while an arbitrator determines the rights of the parties to the arbitration agreement and adjudicates the dispute in controversy. 9 U.S.C. § 3. Though the FAA was primarily intended to promote the enforcement of arms length agreements between sophisticated commercial entities, In re Knepp, 229 B.R. 821 (Bankr. N.D. Ala. 1999), arbitration clauses found in form consumer contracts are generally enforceable where they have not been obtained by fraud or duress, and where the terms are not unconscionable.[1] Allied-Bruce Terminix Cos. v. Dobson, 115 S. Ct. 834 (1995).

The federal presumption that valid arbitration agreements should be enforced, however, is often in direct conflict with the goal of bankruptcy jurisdiction to have one centralized forum for the prompt resolution of disputes affecting the bankruptcy estate. Zimmerman v. Continental Airlines, Inc., 12 F.2d. 55 (3d Cir. 1983); In re Hemphill Bus Sales, Inc., 259 B.R. 865 (Bankr. E.D. Tex. 2001); Ethel M. Mintze v. American General Finance, Inc. 288 B.R. 95 (Bankr. E.D. Pa. 2003); In re Knepp, 229 B.R. 821 (Bankr. N.D. Ala. 1999)(court finds "inherent conflict" between FAA and Bankruptcy Code). Permitting arbitration to proceed independent of a bankruptcy case can subject debtors and other interested parties to piecemeal litigation, depletion of estate assets on arbitration costs, and inequitable treatment of claims. Such results are contrary to the broad grant of authority given to bankruptcy courts to stay all actions or proceedings

[1] Though the Plaintiff contends that there are sufficient grounds for this Court to invalidate the arbitration clause based on state-law contract formation issues, this brief will focus exclusively on the enforceability of the clause in a bankruptcy forum. Should this Court refuse to exercise its discretion to deny enforcement of the clause, the Plaintiff requests an opportunity to present evidence and argument on the contract formation issues relating to the agreement's enforceability.

against the debtor so that a fair administration of the debtor's estate, including a balancing of the diverse parties' interests, can take place in a single forum. In re United States Lines, Inc., 197 F.3d 631, 640 (2d Cir. 1999), *quoting* In re Ionosphere, 922 F.2d 984, 989 (2d Cir. 1990)(one of the primary purposes of bankruptcy "effectuated by Sections 362 and 105 of the Code" is to "allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas."

The first Court of Appeals to address the conflict between the FAA and the Bankruptcy Code found that bankruptcy courts have the "sound discretion" to determine if arbitration should be stayed in order to protect the debtor. Zimmerman v. Continental Airlines, Inc., 712 F.2d. 55 (3d Cir. 1983)(Bankruptcy Code "impliedly modifies" the FAA).

In response to the 1984 amendments limiting bankruptcy court jurisdiction over certain proceedings[2] and the Supreme Court decision in Shearson/American Express, Inc. v. McMahon, 482 U.S. 220 (1987), the Third Circuit subsequently modified its Zimmerman holding as to non-core matters. Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149 (3d Cir.1989). The Hays court held where an adversary proceeding involves a non-core matter, the bankruptcy court lacks discretion to deny enforcement of arbitration absent a showing that the text, legislative history or purpose of the Bankruptcy Code conflicts with the arbitration of the matter in question.[3] Nevertheless, Zimmerman

---

[2] *See* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333 (1984).

[3] The 1984 amendments extended original but not exclusive jurisdiction to the district court over non-core proceedings. The Hays court reasoned that as to non-core matters, a

continues to be widely followed and courts generally find, at least as to core proceedings, that a bankruptcy judge may refuse to enforce an arbitration agreement and may stay any pending arbitration proceedings. See, *e.g.*, In re United States Lines, Inc., 197 F.3d 631 (2d Cir. 1999); Selcke v. New England Ins. Co., 995 F.2d 688 (7th Cir. 1993); In re Spectrum Info. Technologies., Inc., 183 B.R. 360 (Bankr. E.D.N.Y. 1995); In re Sacred Heart Hosp., 181 B.R. 195 (Bankr. E.D. Pa. 1995).

B. This Court's Previous Decisions in *Guild Music* and *Larocque* are Consistent With The Majority View That Bankruptcy Courts May Exercise Discretion to Deny Enforement of Arbiration Agreements.

In their memorandum, the Defendants acknowledge that this Court, in Larocque v. Citifinacial Mortgage Co., 283 B.R. 640, 642 (Bankr. D.R.I. 2002), held that a Bankruptcy Court retains the discretion to deny or compel arbitration where two competing directives existed, namely, the FAA and the Bankruptcy Code. *See* Defendants' Memorandum, p. 5. However, in focusing solely on the fact that the holding in Larocque maintains that a Bankruptcy Court retains discretion to deny arbitration in cases where there may be a conflict between the Bankruptcy Code and the FAA, *See* Defendant's Memorandum, p. 5, Defendants ignore an important aspect of the Court's conclusion in that case, that the "...adversary proceeding is a core matter, which *strongly favors* it staying in the Bankruptcy Court." (*emphasis added*) Id. At 642. In Larocque, this Court did not merely state that a Bankruptcy Court maintains discretion to retain such a matter, but that it should retain jurisdiction over such litigation. Id. At 642.

---

trial in the bankruptcy court followed by a possible challenge to the recommended findings of fact and conclusions of law and subsequent trial *de novo* in the district court could be less expedient than proceeding by arbitration.

In Guild Music, this Court adopted the reasoning of Zimmerman that the Bankruptcy Code "impliedly modifies" the FAA, and concluded that "where the issues in dispute involve "core" bankruptcy matters, which are the exclusive subject matter of the bankruptcy court, such issues may not be referred to arbitration." Guild Music, 100 B.R. at 629, *citing* In re Braniff Airways, 33 B.R. 33 (Bankr.N.D.Tex. 1983). As to non-core matters, this Court held that "it is within the Court's discretion to determine whether the bankruptcy court or the arbitration panel is the appropriate forum for deciding [the non-core issue]." Guild Music, 100 B.R. at 629.

## II. This Action Is a Core Proceeding and Therefore Arbitration is Inappropriate.

In filing this action, the Plaintiff has requested that this Court make a determination as to the "allowance or disallowance of claims against the estate." *See* 28 U.S.C. § 157(b)(1)(B). There can be no question that the Defendant, MERS, has filed a proof of claim in this Chapter 13 and has sought to have its claim administered in this case.[4] In fact, the claim seeks treatment as an "allowed secured claim" for purposes of section 506 of the Code.

The claims for relief raised in the Plaintiff's Objection and Complaint based on the Defendants' violations of the TILA go to the fundamental bankruptcy issue of whether the Defendant's claim should be allowed under section 502. In seeking disallowance of the Defendants' claim based on the Defendants' violation of the TILA, the Plaintiff is appropriately asserting that the Defendants' "claim is unenforceable

[4] The claim was filed by the Defendant, MERS, on July 15, 2005, alleging a total amount owed of $211,314.66 and a pre-petition arrearage of $15,237.59.

against the debtor and property of the debtor, under an agreement or applicable law ...." 11 U.S.C. § 502(b)(1). As such, it is undeniably a core proceeding.

In addition, the Plaintiff seeks a claim for statutory damages based on Defendants' violation of the TILA. To the extent that the Plaintiff is seeking any affirmative recovery against the Defendant, this also is a core proceeding as it involves "counterclaims by the estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(1)(C); *see, e.g.,* Pate v. Melvin Williams Mfd. Homes, Inc. (In re Pate), 198 B.R. 841 (Bankr.S.D.Ga. 1996)(TILA adversary proceeding filed against creditor who filed proof of claim in Chapter 13 case is core based on 28 U.S.C. § 157(b)(1)(C)).

Most significantly, though, this action seeks to enforce the Plaintiff's exercise of the extended right of rescission under the TILA. In a credit transaction secured by a consumer's home such as the case here, the creditor must provide the consumer with accurate TILA disclosures and a notice of right to cancel. If the material disclosures or the notice of right to cancel are not provided as required, the borrower's right of rescission expires at the earliest of the sale of the property or three years from the date of consummation. 15 U.S.C. § 1635(f). Failure to provide accurate material disclosures, even if that failure is small or technical in nature, extends the right to rescind until it is terminated by expiration of the three-year period or by transfer of the property. *See, e.g.,* Steele v. Ford Motor Credit Co., 783 F.2d 1016 (11th Cir. 1986); In re Rodrigues, 278 B.R. 683 (Bankr.D.R.I. 2002); In re Lombardi, 195 B.R. 569 (Bankr.D.R.I. 1996); In re Brown, 106 B.R. 852 (Bankr. E. D. Pa. 1989).

On July 13, 2005, the Plaintiff exercised this extended right of rescission by forwarding to Defendant, MERS, a written notice of rescission. *See* Exhibit A to

Plaintiff's Complaint. On August 29, 2005, the Plaintiff again exercised this extended right of rescission by forwarding to Defendant, Wells Fargo, a written notice of rescission. *See* Exhibit B to Plaintiff's Complaint. Based on this rescission, the Plaintiff seeks a declaration that the mortgage on her home held by one or more of the Defendants is void. *See* In re Lombardi, 195 B.R. 569 (Bankr.D.R.I. 1996)(mortgage declared void based on debtor's exercise of TILA extended right of rescission). As such, this action seeks a determination of the "validity, extent or priority" of the Defendant's lien. 28 U.S.C. § 157(b)(1)(K); *see, e.g.*, Walker v. Contimortgage (In re Walker), 232 B.R. 725 (Bankr.N.D.Ill. 1999) (action was core proceeding under 28 U.S.C. § 157(b)(2)(K) because it attacks [creditor's] asserted mortgage lien). Defendants correctly acknowledge that this matter is a core proceeding. *See* Defendants' Memorandum, p. 6. Given the claims asserted and the relief sought, it would be inconceivable for Defendants to argue that this is not a core proceeding. Since this matter is clearly a core proceeding, it should not be referred to arbitration. In re Guild Music Corp., 100 B.R. 624 (Bankr. D.R.I. 1989).

## III. **This is a Core Proceeding and This Court Should Exercise Discretion To Retain This Matter and Not Refer it to Arbitration.**

The dispute relating to the Plaintiff's mortgage with Wells Fargo and/or MERS is inextricably tied to this Chapter 13 bankruptcy proceeding. Resolution of that dispute will impact on whether the Plaintiff will be able to retain her home and maintain payments under her proposed Chapter 13 Plan, whether her Chapter 13 Plan will be confirmed, whether the Plaintiff will obtain a fresh start, and will also affect how creditors (not simply Wells Fargo and/or MERS) will be provided for under her Plan.

Thus, referring this matter to arbitration would not be consistent with the purpose of the Bankruptcy Code.

While this Court may not have specifically referenced the "McMahon test" in Guild Music, it is clear that the reasoning adopted by this Court is consistent with McMahon. The very issues this Court in Guild Music found to be core, the allowance and priority of claims and the determination of secured status, are "exclusively bankruptcy matters" under the bankruptcy system established by Congress and therefore reflect a clear Congressional intent to preclude a waiver of judicial remedies. Guild Music, 100 B.R. at 628. As the court in In re Hemphill Bus Sales, Inc., 259 B.R. 865, 870 (Bankr. E.D. Tex. 2001) observed, based on its review of National Gypsum and this Court's decision in Guild Music: "Although courts have generally found that the core/non-core issue is 'useful' but not dispositive of the arbitration question, it is a factor that courts must consider."

Section 502(b) of the Code mandates a procedure for the bankruptcy court to determine the amount and allowance of claims if an objection to the claim is filed. It provides that "the **court**, after notice and hearing, shall determine the amount of such claim … and shall allow such claim in such amount…." *See also*, Fed.R.Bankr.Proc. 3007. The bankruptcy court may disallow the claim if it is "unenforceable against the debtor" based on the contract between the parties or "applicable law," such as the claims in this case based on the violation of TILA. 11 U.S.C. § 502(b)(1). As this Court correctly observed in Guild Music, the determination of whether a creditor's claim should be "allowed" is a "separate bankruptcy issue which can only be determined in this Court." Guild Music, 100 B.R. at 628.

Section 506 of the Code additionally provides that to the extent any portion of a creditor's claim is allowed, the bankruptcy court can be requested to determine, as was done in this case, whether it should be treated as an "allowed secured claim." Once again, this is a concept that is unique to bankruptcy law and it subject to a well-defined judicial procedure. Section 506(a) provides that the "value" of the creditor's interest used to determine whether a claim is secured or unsecured is "determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use on a plan affecting such creditor's interest." *See also*, Fed.R.Bankr.Proc. 3013.

As in Larocque, the outcome of this adversary proceeding will have a critical impact on the Plaintiff's Chapter 13 Plan. If the Plaintiff is successful with her challenge to the Defendant's lien based on TILA rescission, the Defendant's claim would be treated as an unsecured claim. In re Rodrigues, 278 B.R. 683 (Bankr.D.R.I. 2002); In re Quenzer, 266 B.R. 760 (Bankr. D. Kansas 2001). It will determine whether the Defendant is entitled to any of the protections afforded to residential mortgage holders under section 1322(b)(2). It will also determine whether the Defendants are precluded from recovering as a secured claim (or otherwise) any pre-petition foreclosure expenses, attorney's fees or other costs related to the foreclosure. 11 U.S.C. § 506(b). And it will determine the priority of any Defendants' claim under section 507 of the Code.

All of these determinations "go to the very heart and purpose of the Bankruptcy Code: the expeditious and equitable distribution of the assets of the debtor's estate and the Debtor's opportunity for a fresh start." Hemphill Bus, 259 B.R. at 871 (*footnotes omitted*). The resolution of this adversary proceeding will determine the success or

failure of the Plaintiff's Chapter 13 Plan. Though applicable non-bankruptcy law, such as Plaintiff's TILA claims, must be considered (as Congress instructed in section 502(b)), this action fundamentally seeks the adjudication of federal bankruptcy rights. As such, it should not be referred to arbitration.

Application of the factors that bankruptcy courts generally consider in exercising discretion whether to enforce an arbitration agreement also compels retention of jurisdiction by this Court. These factors include the degree to which (1) the nature and extent of the litigation and evidence would make the judicial forum preferable to arbitration, (2) the extent to which special expertise is necessary to resolve the dispute and, (3) the extent to which the bankruptcy court may more efficiently and economically resolve the dispute, and without depleting estate assets. *See, e.g.*, In re Hemphill Bus Sales, Inc., 259 B.R. 865 (Bankr. E.D. Tex. 2001); In re Slipped Disc Inc., 245 B.R. 342 (Bankr. N.D. Iowa 2000); In re Trident Shipworks, Inc., 243 B.R. 130 (Bankr. M.D. Fla. 1999); In re Edgerton, 98 B.R. 392 (Bankr. N.D. Ill. 1989). Another factor given considerable weight is that bankruptcy courts can more appropriately consider the interests of creditors who are not a party to the arbitration agreement and who would likely be precluded from participating in the arbitration forum. *See, e.g.*, Hemphill Bus, *supra*, 259 B.R. 865.

As to the first factor, because this litigation is so closely related to the Debtor's Chapter 13 Plan, it is clearly preferable for this Court to oversee and ultimately resolve the adversary proceeding. Confirmation of the Plaintiff's Plan has been deferred pending the outcome of this litigation and this court has continued the confirmation hearing

accordingly. Given the interrelationship between the two proceedings, both matters should be handled by this court.

There can be no question, as to the second factor, that the issues raised in this adversary proceeding require the special expertise of this Court. Arbitrators clearly do not have expertise in deciding issues such as the "allowance" of claims or "allowed secured" status or "priority" of a claim in bankruptcy. More importantly, these issues are within the exclusive jurisdiction of the bankruptcy court and should be "protect[ed] from collateral attack from another forum." In re Cavanaugh, 271 B.R. 414, 424 (Bankr.D.Mass. 2001).

Even the TILA rescission issue requires special bankruptcy expertise. Unlike the exercise of rescission in a non-bankruptcy context, rescission in bankruptcy results in not only the voiding of the creditor's mortgage, but the treatment for bankruptcy purposes of the creditor's claim as an unsecured claim. This in turn impacts on whether any tender obligations exist in the bankruptcy case on the part of debtor. *See* Ethel M. Mintze v. American General Finance, Inc. 288 B.R. 95 (Bankr. E.D. Pa. 2003).

Most bankruptcy courts, including this Court, have held that upon a TILA rescission by a debtor in bankruptcy, the mortgage is rendered void and the creditor's claim, if any, is treated as an unsecured claim. In re Rodrigues, 278 B.R. 683 (Bankr.D.R.I. 2002); In re Quenzer, 266 B.R. 760 (Bankr. D. Kansas 2001); Celona v. Equitable Nat. Bank, 98 B.R. 705 (E.D. Pa. 1989); In re Whitley, Inc., 177 B.R. 142 (Bankr.D.Mass. 1995); In re Myers, 175 B.R. 122 (Bankr.D.Mass. 1994); In re Brown, 134 B.R. 134 (Bankr. E.D. 1991); In re Perkins, 106 B.R. 863 (Bankr. E.D. 1989); In re Chancy, 33 B.R. 355 (Bankr.N.D. Okla. 1983); In re Piercy, 18 B.R. 1004

(Bankr.W.D.Ky. 1982); In re Wright, 11 B.R. 590 (Bankr.S.D.Miss. 1981). These courts have uniformly held that the "judicial preconditioning of cancellation of the creditor's lien on the consumer's tender is inappropriate in bankruptcy cases." Celona, supra, 98 B.R. at 707.

The compelling justification for this treatment of rescission in bankruptcy is described more fully by the court in Piercy:

> Unlike the situation absent bankruptcy, there is a legitimate, legal impediment to the debtor's reciprocal performance. It would be palpably unfair to deny the relief to which a consumer is entitled under TIL because the consumer has also availed himself of bankruptcy relief. To do so would require that the consumer choose between bankruptcy and TIL, something neither form of statutory relief contemplates.
>
> In re Piercy, supra, 18 B.R. 1004, 1007.[5]

The third factor also favors retention by this Court as it can more efficiently and expeditiously resolve this case. This Court imposes rigorous scheduling deadlines and prompt adjudication of contested matters, whereas the timing and outcome of arbitration are uncertain. Moreover, it would be inefficient and a waste of judicial resources for an arbitrator to decide some but not all of the issues raised in this adversary proceeding, as this Court would ultimately need to resolve the bankruptcy issues. Given that all of the

[5] The minority view on this issue presented in In re Lynch, 170 B.R. 26 (Bankr.D.N.H. 1994). The court in Lynch, relying on the Eleventh Circuit opinion in Williams v. Homestake Mortgage Co., 968 F.2d 1137 (11th Cir. 1982), concluded that a bankruptcy court, invoking its equitable powers, may condition the debtor's right of rescission in a Chapter 13 case by requiring tender of the principal loan balance. Although Homestake does hold that courts have the authority to restructure loans following rescission based upon equitable considerations, including the possibility of requiring the execution of new security instruments containing different terms, the court did not consider or rule upon the role of a bankruptcy court in carrying out the purposes of TILA in the bankruptcy context.

Debtor's disposable income is to be devoted to her Chapter 13 Plan, any costs imposed in the arbitration forum in order to have the matter prosecuted will also impact on her Plan.

The fourth factor strongly compels the denial of a referral to arbitration. Unlike an arbitrator, this Court must consider the impact of this adversary proceeding on other creditors. The amount and treatment of the Defendant's claim, and the issue of whether the Plaintiff will retain her home, all necessarily affect the distribution and treatment of other creditors' claims, particularly the Debtor's unsecured creditors.

This Court noted that, in the Larocque matter, "the resolution of the TILA issue…" would "…clearly affect the Debtor, as well as the plan he will be able to propose, and ultimately creditors." Id. At 642. Therefore the Court concluded that, "it is well within the Court's discretion to retain the litigation, and in this case it would likely be an abuse of said discretion not to do so." Id. At 642. The same situation exists in this case. Resolution of the TILA issue in the adversary proceeding will clearly affect the Debtor, her Plan, and the creditors.

## CONCLUSION

For the reasons stated above, the Plaintiff respectfully requests that the Defendants' motion be denied.

**In Re: Stephanie D. Brown** **Case No. 05-12431-ANV, Chapter 13**

**Stephanie D. Brown vs. Mortgage Electronic Registration Systems, Inc., et als**
**A.P. No. 05-01052**

# EXHIBIT F

***UNITED STATES BANKRUPTCY COURT***
***FOR THE DISTRICT OF RHODE ISLAND***

| | |
|---|---|
| In Re: ***Stephanie D. Brown***<br>Debtor(s) | BK No. **1:05-bk-12431**<br>Chapter |
| **Stephanie D. Brown *et al.***<br>Plaintiff(s)<br>v.<br>**Mortgage Electronic Registration Systems, Inc. *et al.***<br>Defendant(s) | AP No. **1:05-ap-01052** |

***Order Denying Motion/Application (doc# 17 ) After Hearing***

***Re: Defendant's Motion to Compel Mediation/Arbitration and to Dismiss Case***

Upon consideration of the Motion/Application and any objection or response thereto, and after hearing, IT IS ORDERED that for the reasons stated by the Court in its bench decision which are incorporated herein by reference, the Motion/Application (doc# 17 ) is **DENIED** .

Judgment #: ***1:05-ap-01052 - 22 - 17***

***ORDER:***

***HAD***
Deputy Clerk

***ENTER:***

Arthur N. Votolato
U.S. Bankruptcy Judge
Date: **12/7/05**

Entered on Docket: **12/7/05**
Document Number: **22 - 17**

153ogmaah.jsp #153