# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IN RE:<br><br>STEPHANIE D. BROWN,<br>Debtor | Case No. 05-12431-ANV<br>Chapter 13 |
| STEPHANIE D. BROWN,<br>Plaintiff/Appellee,<br><br>v.<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and WELLS FARGO BANK, N.A., AS TRUSTEE OF THE AEGIS ASSET BACKED SECURITIES TRUST 2004-3,<br>Defendants/Appellants. | A.P. No. 05-01052 |

**Case No. 1:05-cv-00523-s-LDA**

On Appeal by Order Granting Leave to Appeal from a
Judgment of the United States Bankruptcy Court
for the District of Rhode Island

---

## BRIEF OF DEFENDANTS-APPELLANTS

---

PARTRIDGE SNOW & HAHN LLP
Charles A. Lovell, Esq. (#4004)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX

# TABLE OF CONTENTS

**Page**


**I. STATEMENT OF THE ISSUES PRESENTED AND THE APPLICABLE STANDARD OF APPELLATE REVIEW** ..... 1

A. Statement of the Issues Presented ..... 1

B. Applicable Standard of Appellate Review ..... 1

C. Basis of Appellate Jurisdiction ..... 2

**II. STATEMENT OF THE CASE AND FACTS** ..... 2

A. Summary of Statement of the Case ..... 2

B. Facts and History of the Case ..... 3

**III. ARGUMENT** ..... 5

A. Summary of Argument ..... 5

B. Federal Public Policy Dictates that Arbitration Provisions be Enforced and the FAA Upheld ..... 6

C. Whether the Matter is a Core Proceeding is not Dispositive as to the Enforcement of the Arbitration Provision ..... 8

D. Arbitration of the Adversary Proceeding Would not Impair or Negate Substantive Bankruptcy Code Rights and thus should be Enforced ..... 12

**IV. CONCLUSION** ..... 14

# TABLE OF AUTHORITIES

## CASES

Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.)
815 F.2d 165 (1st Cir. (Mass.) 1987)....5

Buckeye Check Cashing, Inc. v. Cardegna
Slip Opinion No. 04-1264, 546 U.S. _________ (February 21, 2006)....7

Casco N. Bank, N.A. v. DN Assocs. (In re DN Assocs.)
3 F.3d 512 (1st Cir. (Me.) 1993)....1

Cibro Petroleum Products, Inc. v. City of Albany (In re Winimo Realty Corp).
270 B.R. 108 (S.D.N.Y. 2001)....8,12,13

Dean Witter Reynolds, Inc. v. Byrd
470 U.S. 213 (1985)....6

Durango Georgia Converting, LLC v. TST Impreso, Inc. (In re Durango Georgia Paper Co.)
309 B.R. 394 (S.D. Ga. 2004)....9,10,13

Green Tree Financial Corp.-Alabama v. Randolph
531 U.S. 79 (2000)....6

Halper v. Halper
164 F.3d 830 (3rd Cir. (N.J.) 1999)....5

In re National Gypsum Co.
118 F.3d 1056 (5th Cir. (N.D. Tex.) 1997)....9,10

Johnson v. West Suburban Bank
225 F.3d 366 (3rd Cir. (De.) (2000)....6

Larocque v. CitiFinancial Mortgage Co.-Tx (In re Larocque)
283 B.R. 640, 642 (Bankr. D.R.I. 2002)....8,9

MBNA America Bank v. Hill
436 F.3d 104 (2nd Cir. (N.D.N.Y.) 2006)....10

Mintze v. American General Financial Services, Inc. (In re Mintze)
434 F.3d 222 (3rd Cir. (E.D. Pa.) 2006)....11

Moses H. Cone Memorial Hospital v. Mercury Construction Corp.
460 U.S. 1....6

Pardo v. Akai Electric Co. Ltd. (In re The Singer Company)
2001 U.S. Dist. LEXIS 12902 .......... 9,10,12

Prebor v. Collins (In re I Don't Trust)
143 F.3d 1 (1st Cir. (Mass.) 1998) .......... 1

Shearson/Am. Express, Inc. v. McMahon
482 U.S. 220 (1987) .......... 11

Singleton v. Wells Fargo Bank, N.A. (In re Singleton)
284 B.R. 322 (D.R.I. 2002) .......... 1

Thompson v. Irwin Home Equity Corp.
300 F.3d 88 (1st Cir. (R.I.) 2002) .......... 7,8

United States Lines, Inc. v. American S.S. Owners Manual Protection and Indemnity Ass'n, Inc. (In re United States Lines, Inc.)
197 F.3d 631 (2nd Cir. (S.D.N.Y.) 1999), cert. denied, 529 U.S. 1038 (2000) .......... 10

Western Auto Supply Co. v. Savage Arms (In re Savage Indus.)
43 F.3d 714 (1st Cir. (Mass.) 1994) .......... 1

**STATUTES**

Federal Arbitration Act, 9 U.S.C. § 2 .......... 1,2

Truth-in-Lending Act, 15 U.S.C. § 1601, et. seq .......... 2

Federal Arbitration Act, 9 U.S.C. § 16(a)(1) .......... 2

11 U.S.C. § 362 .......... 7

28 U.S.C. § 158(a) .......... 2

**RULES**

Fed. R. Bankr. P. 8013 .......... 1

## I. STATEMENT OF THE ISSUES PRESENTED AND THE APPLICABLE STANDARD OF APPELLATE REVIEW

### A. Statement of the Issues Presented

1. Whether the Bankruptcy Court erred, as a matter of law, in denying the Defendants' Motion to Compel Mediation/Arbitration and to Dismiss Case.

2. Whether the Bankruptcy Court abused its discretion in retaining jurisdiction of the adversary proceeding.

3. Whether the mediation/arbitration clause in the plaintiff's mortgage should be enforced.

4. Whether the Federal Arbitration Act should be enforced in an adversary proceeding pending in the Bankruptcy Court.

5. Whether the strong public policy in favor of arbitration be upheld where a substantive bankruptcy right is not at issue.

### B. Applicable Standard of Appellate Review

This Court reviews findings of fact utilizing a clearly erroneous standard and reviews questions of law utilizing a de novo standard. See Western Auto Supply Co. v. Savage Arms (In re Savage Indus.), 43 F.3d 714, 719-720 (1st Cir. (Mass.) 1994); Casco N. Bank, N.A. v. DN Assocs. (In re DN Assocs.), 3 F.3d 512, 515 (1st Cir. (Me.) 1993); Fed. R. Bankr. P. 8013. There are no disputes of material fact in this appeal, the issues are ones of statutory interpretation and, therefore, the Court reviews the matter *de novo*. See Prebor v. Collins (In re I Don't Trust), 143 F.3d 1, 3 (1st Cir. (Mass.) 1998); Singleton v. Wells Fargo Bank, N.A. (In re Singleton), 284 B.R. 322, 323 (D.R.I. 2002).

### C. Basis of Appellate Jurisdiction

This matter is before this Court by appeal from the United States Bankruptcy Court for the District of Rhode Island (the "Bankruptcy Court") pursuant to 28 U.S.C. § 158(a) and pursuant to the Memorandum and Order dated February 14, 2006 granting the Defendants' Motion for Leave to Appeal. Pursuant to 28 U.S.C. § 158(a), district courts shall have the jurisdiction to hear appeals from (i) final judgments, orders and decrees (ii) interlocutory orders and decrees issued under particular sections of the Bankruptcy Code set forth therein, and (iii) with leave of court, from other interlocutory orders and decrees. Moreover, the Federal Arbitration Act, 9 U.S.C. § 16(a)(1) (the "FAA"), provides that an appeal may be taken from an order denying a motion to compel arbitration. Accordingly, under both the FAA and the Bankruptcy Code, this Court granted the Defendants leave to appeal.

## II. STATEMENT OF THE CASE AND FACTS

### A. Summary of Statement of the Case

At issue in this appeal is whether an arbitration provision in a mortgage should be enforced as to a claim brought under the Truth-in-Lending Act, 15 U.S.C. § 1601, *et. seq.* ("TILA") but raised by a debtor in a bankruptcy court adversary proceeding. In this case, the Defendants asked to Bankruptcy Court to compel arbitration and/or mediation under the terms of the mortgage and the FAA, 9 U.S.C. § 1, *et. seq*. The Bankruptcy Court denied the Defendants' motion, however, asserting that the FAA conflicts with provisions of the Bankruptcy Code and thus the Bankruptcy Court would retain jurisdiction of the case. Notwithstanding the Bankruptcy Court's decision, arbitrating the dispute would not interfere with or impair substantive bankruptcy rights, and so the Bankruptcy Court should have enforced the arbitration provision.

**B. <u>Facts and History of the Case</u>**

On May 20, 2004, Stephanie D. Brown (the "Debtor") and Margaret Nicholas ("Ms. Nicholas") (the Debtor and Ms. Nicholas are sometimes collectively referred to as the "Borrowers") executed an Adjustable Rate Note in favor of Aegis Lending Corporation ("Aegis") in the original principal amount of $195,000 (the "Note"). <u>See</u> Defendants' Designation of the Record on Appeal and Statement of Issues to be Presented (the "Record"), Designation No. 3, Amended Motion of Mortgage Electronic Registration Systems, Inc. and Wells Fargo Bank, N.A., as Trustee of the Aegis Asset Backed Securities Trust 2004-3, to Compel Mediation and/or Arbitration and to Dismiss this Action or, in the Alternative, to Stay the Proceedings Pending Mediation or Arbitration (the "Motion to Compel"), <u>Exhibit A</u> to the Motion to Compel. To secure the repayment of the Note, the Borrowers granted MERS, as nominee for Aegis, a mortgage (the "Mortgage") on the property located at 12 Kilburn Court, Newport, Rhode Island (the "Property"). <u>See</u> <u>id.</u> at <u>Exhibit B</u> to Motion to Compel. Wells Fargo is the current holder of the Note.

Section 26 of the Mortgage provides that any disputes or controversy relating to the Note, the Mortgage or the transaction shall be subject to mediation and arbitration in accordance with the terms of that section. <u>Id.</u> The Mortgage then states the express procedures for mediation and arbitration. <u>Id.</u> Arbitration of the disputes is governed by the FAA. <u>Id.</u> At the time of the execution of the Note and the Mortgage, the Borrowers also executed a Mediation or Arbitration Disclosure, which disclosed that "disputes regarding your home loan are subject to the mediation and arbitration terms set forth in" the Mortgage. <u>See</u> <u>id.</u> at <u>Exhibit C</u> to Motion to Compel.

On or about June 29, 2005, the Debtor filed a Chapter 13 bankruptcy petition. See the Record, the Motion to Compel, paragraph 6. On July 15, 2005, MERS filed a Proof of Claim asserting a secured claim in the amount of $211,314.66 (the "Proof of Claim"). See id. at paragraph 7. On or about August 3, 2005, the Debtor filed an Adversary Proceeding Complaint (the "Complaint") against MERS alleging violations of TILA (the "Adversary Proceeding"). See id. at paragraph 8. In the Complaint, the Debtor seeks declaratory judgment from the Bankruptcy Court deeming and declaring that the loan violates the disclosure requirements of TILA, deeming and declaring that the Mortgage is void and the Note wholly unsecured, deeming and declaring that the Debtor is not liable for any finance charges or other charges, and praying for an award of statutory damages and costs. See id. at paragraph 9.

At no time have the parties mediated or arbitrated the disputes at issue in the Adversary Proceeding. See id. at paragraph 10. On November 2, 2005, the Defendants filed the Motion to Compel. See the Record, the Motion to Compel. The Debtor filed an objection to the Motion (the "Objection"). See the Record, Designation No. 4, Plaintiff's Objection to the Motion to Compel. On December 7, 2005, the Bankruptcy Court heard oral argument on the Motion and entered the Order Denying Motion/Application After Hearing (the "Order"). See the Record, Designation No. 2, Order Denying Motion/Application (Doc.#17) After Hearing. The Bankruptcy Court refused to compel arbitration and/or mediation and ruled that the Bankruptcy Court would allow the litigation to proceed. See id.

In its decision, the Bankruptcy Court stated that, after hearing the testimony of the Debtor relating to the underlying claim, "I've heard enough this morning to want to exercise the discretion the way I've described it. . ." See The Record, Designation 1, Transcript of Hearing held on December 7, 2005 (the "Transcript"), at page 50. The Bankruptcy Court also indicated

that "it would take probably wild horses to take this case away from the bankruptcy court if I have discretion to keep it here." Id. at 49. The Bankruptcy Court therefore denied the Motion to Compel. See id. at 50.

On December 15, 2005, the Defendants filed a Motion for Leave to Appeal and Memorandum, to which the Plaintiff objected. See the Record, Designation No. 5, Defendants' Notice of Appeal filed December 15, 2005; Designation No. 6, Defendants' Motion for Leave to Appeal and Memorandum in Support thereof filed December 15, 2005. After oral argument in this Court, on February 14, 2006, the Motion for Leave to Appeal was granted.

## III. ARGUMENT

### A. Summary of Argument

The current trend among courts determining whether to enforce an arbitration agreement is to look beyond the core versus non-core nature of the underlying proceeding. Generally, a proceeding is a core proceeding if it invokes a "substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." Halper v. Halper, 164 F.3d 830, 836 (3rd Cir. (N.J.) 1999). A non-core proceeding involves issues that do not arise out of the bankruptcy function of adjusting debtor-creditor rights. See Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.), 815 F.2d 165, 167 (1st Cir. (Mass.) 1987). Instead of the core/non-core distinction, the courts look to whether a substantive bankruptcy right would be impaired by enforcing the arbitration agreement. In this case, the rights at issue arising under TILA are wholly statutory and do not arise under the Bankruptcy Code and arbitration of those rights do not impair a substantive bankruptcy right. As a result, the Bankruptcy Court erred when it refused to enforce the arbitration agreement.

**B. Federal Public Policy Dictates that Arbitration Provisions be Enforced and the FAA Upheld**

The FAA, which governs the arbitration clause at issue, establishes a federal mandate for the enforcement of arbitration provisions. See Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983). It provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable." FAA, 9 U.S.C. § 2. The presumption in favor of arbitration established by the FAA "is a powerful one". Johnson v. West Suburban Bank, 225 F.3d 366, 369 (3rd Cir. (De.) 2000), cert. denied, 121 S.Ct. 1081 (2001). "[A] party who agrees to arbitrate, but then asserts that his or her statutory claim cannot be vindicated in an arbitral forum, faces a heavy burden." Johnson, 225 F.3d at 369.

The Supreme Court of the United States has stated clearly and repeatedly that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." See Moses H. Cone Memorial Hospital, 460 U.S. at 24. More importantly, courts must "rigorously enforce agreements to arbitrate even where it may result in piecemeal litigation." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985). Finally, in considering the arbitrability of federal statutory claims, the U.S. Supreme Court has stated that it "reject[s] generalized attacks on arbitration that rest on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants." Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 89-90 (2000). In Green Tree, the court stated that "even claims arising under a statute designed to further important social policies may be arbitrated because 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum', the statute serves its functions." Id. at 90.

As recently as last month, the Supreme Court renewed its strong support of arbitration provisions. In Buckeye Check Cashing, Inc. v. Cardegna, Slip Opinion No. 04-1264, 546 U.S. _____ (February 21, 2006), the Supreme Court held that an arbitration provision in a contract could be enforced even though the plaintiff asserted that the contract as a whole was void under various usury, consumer protection and state lending laws. The Supreme Court held that because the plaintiffs challenged the contract as a whole, but not specifically the arbitration agreement, the arbitration provision was enforceable "apart from the remainder of the contract." Id. at 5. Thus, even in cases where the entire contract's enforceability is at issue, the United States Supreme Court has held that an arbitration provision within that contract should be enforced.

As a result of the strong public policy in favor of arbitration, the courts, including the First Circuit, have explicitly upheld and enforced arbitration and mediation provisions in the context of a TILA rescission action. In Thompson v. Irwin Home Equity Corp., 300 F.3d 88, 91 (1st Cir. (R.I.) 2002), the First Circuit held that, based on the clear language of the agreement (which is the identical language in the Mortgage in this case), the plaintiffs' "attempt to exercise their right to rescind does not affect [the lender's] right to have an arbitrator decide whether there are indeed grounds for rescission." The First Circuit in Thompson held that TILA litigation "is unmistakably governed by the arbitration clause." Id. The First Circuit therefore affirmed the District Court's ruling requiring the plaintiffs to arbitrate their TILA claims against the lender.

The First Circuit rejected the plaintiffs' argument that the attorneys' fees provision in the arbitration section of the mortgage violated and conflicted with TILA, thus preventing arbitration. The First Circuit instead again upheld the district court, holding that "arbitration is the correct initial forum for the [plaintiffs] to air their objection to the attorney's

fees provision in the arbitration agreement." Id. The court noted that if an arbitrator did improperly award attorney's fees against the plaintiffs, the district court would then be in a position to hear their argument that the challenged provision on attorney's fees is unenforceable. Id. at 92. Thus, the First Circuit has given us a clear directive as to the enforceability of an arbitration provision in a TILA action and this Court should extend the Thompson holding to the case before this Court and enforce the arbitration provision.

### C. Whether the Matter is a Core Proceeding is not Dispositive as to the Enforcement of the Arbitration Provision

Since the enactment of the FAA, many courts have held that in a bankruptcy context, the enforcement of an arbitration clause is dependent on the nature of the proceeding, although the strong public policy in favor of arbitration must always be considered. Thus, in Larocque v. CitiFinancial Mortgage Co.-Tx (In re Larocque), 283 B.R. 640, 642 (Bankr. D.R.I. 2002), the Bankruptcy Court held that a court retains the discretion to deny or compel arbitration where two competing directives existed, namely, the FAA and the Bankruptcy Code. The court noted that "where the dispute involves an agreement containing such a clause, the first question is whether arbitration is mandatory, or whether there is discretion as to how the dispute gets adjudicated. In resolving that issue it is necessary to consider two competing federal statutes, the FAA, and the Bankruptcy Code, by weighing the policy objectives of the FAA and the Bankruptcy Code, within the context of the bankruptcy case." Id. at 641-642.

The Bankruptcy Court in In re Larocque, upon which the Plaintiff relies, holds that in core proceedings, such as this Adversary Proceeding, where the interest of the bankruptcy court may be greater, there may be a conflict between the Bankruptcy Code and the FAA, and so the Bankruptcy Court retains discretion to deny arbitration. See id.; Cibro v. Petroleum Products, Inc. v. City of Albany (In re Winimo Realty Corp.), 270 B.R. 108, 118 (S.D.N.Y.

2001). There is no dispute that the matter is a core proceeding because it arises out of the Proof of Claim and the Plaintiff's defense thereto—namely that the Defendants' secured claim should not be allowed because the Note and Mortgage should be rescinded under TILA. However, the Bankruptcy Court in In re Laroque itself admits that "even a determination that a proceeding is core will not automatically give the bankruptcy court discretion to stay arbitration for not all bankruptcy proceedings are premised on provisions of the Code that inherently conflict with the Federal Arbitration Act; nor would arbitration of such proceedings necessarily jeopardize the objectives of the Bankruptcy Code." Id., at 118; see also, Pardo v. Akai Electric Co. Ltd. (In re The Singer Company), 2001 U.S. Dist. LEXIS 12902 (noting that by not granting the bankruptcy court exclusive jurisdiction over non-core matters, it is clear that Congress did not envision all bankruptcy related matters being adjudicated in a single forum and so even where a matter is a core proceeding, the Bankruptcy Court must determine whether the proceedings involve provisions of the Code that so inherently conflict with arbitral resolution); and In re National Gypsum Co., 118 F.3d 1056, 1067 (5th Cir. (N.D. Tex.) 1997) (noting that not all core matters meet the standard necessary for a court to deny arbitration).

In denying arbitration, the party seeking denial of arbitration, and the Court, must "point to a specific substantive bankruptcy right that will be negated or impaired if the matter is sent to arbitration." Durango Georgia Converting, LLC v. TST Impreso, Inc. (In re Durango Georgia Paper Co.), 309 B.R. 394, 401 (S.D. Ga. 2004). Thus, in In re The Singer Company, 2001 U.S. Dist. LEXIS at *14-15, the court refused to deny arbitration because the adversary proceeding in that case, involving the debtor's complaint to rescind a contract, centered on "pre-petition contractual rights, obligations and conduct". The court reasoned that the matter was "a core proceeding only because it is in effect a counterclaim to the claim [the creditor] has asserted

against the estate. . . Because the issues underlying the Adversary Proceeding—the parties' rights under the Agreement and whether [the creditor] performed its obligations under the Agreement—do not arise from rights conferred or obligations imposed by the Bankruptcy Court, they do not, standing alone, present an inherent conflict between Code policy and the FAA's strong endorsement of the arbitral forum." Id.

In comparison, in United States Lines, Inc. v. American S.S. Owners Mutual Protection and Indemnity Ass'n, Inc. (In re United States Lines, Inc.), 197 F.3d 631, 638-639 (2nd Cir. (S.D.N.Y.) 1999), cert. denied, 529 U.S. 1038 (2000), arbitration was denied because, in the absence of a bankruptcy court declaration regarding certain indemnity rights, the debtor might be forced to distribute assets in a manner inconsistent with the Bankruptcy Code's distribution provisions. Because arbitration could have resulted in a direct conflict with the Bankruptcy Code, arbitration was denied. Id. Similarly, the court in In re National Gypsum, 118 F.3d at 1069, held that "at least where the cause of action at issue was derivative of rights under the Bankruptcy Code", and "completely divorced" from pre-petition contractual rights, the Bankruptcy Court was within its discretion to deny arbitration.

More recent cases addressing this issue have moved away from the core/non-core distinction and look wholly to whether a substantive bankruptcy right will be impacted. Even actions so intertwined with and arising directly out of the Bankruptcy Code as a complaint for violation of the automatic stay, 11 U.S.C. § 362, did not preclude enforcement of the arbitration provision. See MBNA America Bank v. Hill, 436 F.3d 104 (2nd Cir. (N.D.N.Y.) 2006). Because arbitration "would not seriously jeopardize the objectives of the Bankruptcy Code" under the facts of that case, arbitration was compelled. Id. Moreover, an arbitrator of the issue would be forced to interpret and enforce a statute, not an order of the bankruptcy court. Id. The court

concluded that "arbitration is presumptively an appropriate and competent forum for federal statutory claims." Id. (*citing*, Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 233 (1987).

In another recent case virtually identical to the one before this Court, Mintze v. American General Financial Services, Inc. (In re Mintze), 434 F.3d 222 (3rd Cir. (E.D. Pa.) 2006), the Third Circuit went so far as to state that a Bankruptcy Court lacked the authority and the discretion to deny enforcement of an arbitration provision in a TILA rescission case. Whether the matter was core or non-core was not conclusive; instead, the underlying nature of the proceedings was determinative. Because TILA claims are based on statutory rights, not bankruptcy rights, arbitration should have been compelled. Even though the ultimate outcome of the case would have an impact on the rights of other creditors, this was not sufficient to preclude arbitration.

The court first analyzed whether there was any judicial or Congressional intent to preclude arbitration as a remedy for the TILA statutory rights. Id. at 224. Finding none, and none having been offered by the debtor, the court was then left with determining whether there was an inherent conflict between arbitration and the Bankruptcy Code. Id. The court held that:

> The statutory claims that Mintze has raised are based on TILA and several federal and state consumer protection laws. Mintze has failed to raise any statutory claims that were created by the Bankruptcy Code. With no bankruptcy issue to be decided by the Bankruptcy Court, we cannot find an inherent conflict between arbitration of Mintze's federal and state consumer protection issues and the underlying purposes of the Bankruptcy Code. Id. at 231-232.

The court ultimately concluded that in the absence of evidence in the form of statutory text, legislative history, or the underlying purposes of the Bankruptcy Code that

Congress intended to preclude waiver of judicial remedies for the TILA claims, arbitration must be compelled. Id. at 231.

**D. Arbitration of the Adversary Proceeding Would not Impair or Negate Substantive Bankruptcy Code Rights and thus should be Enforced**

In this Adversary Proceeding, as in the In re Mintze case, a substantive bankruptcy right is not at issue and enforcement of the arbitration provision would not jeopardize the provisions of the Bankruptcy Code. The cause of action lies entirely within federal law—the TILA. The matter is a core proceeding because the outcome of the Adversary Proceeding will determine the priority and secured status of the Proof of Claim, and thus will impact other creditors of the Debtor, as in In re The Singer Company matter. Nevertheless, the legal, substantive issues arising in the Adversary Proceeding have absolutely nothing to do with bankruptcy law. Accordingly, there is no conflict with the FAA and the Bankruptcy Code, and this Court should compel arbitration. Enforcement of the provision would by no means "seriously jeopardize the objectives of the Bankruptcy Code." In re Winimo Realty Corp., 270 B.R. at 123. Rather an arbitrator would only decide the parties' rights under TILA and would not make any decision concerning bankruptcy rights. As in the In re Winimo Realty Corp. matter, this Court should uphold the arbitration provision because "the issues underlying the [proceeding] do not arise from rights conferred or obligations imposed by the Bankruptcy Code." Id. The Plaintiff does not assert any rights under the Bankruptcy Code in the Adversary Proceeding. "None of these claims were created by the Bankruptcy Code; they are simply contractual claims derivative of pre-bankruptcy arrangements." Id. Similarly, the Adversary Proceeding is a federal statutory claim derivative of pre-bankruptcy contracts—the Note and the Mortgage. The pre-bankruptcy contract, agreed to by the Plaintiff and the Defendants, provided for an arbitral forum in the event of a contract dispute. There was no contemplation that

bankruptcy rights would be arbitrated, just as the parties did not contemplate a bankruptcy court overriding their agreed-upon contractual rights to decide a non-bankruptcy statutory issue. Indeed, the agreement specifically supports this conclusion by stating that "an application by or on behalf of the Borrower for relief under the federal bankruptcy laws" is not included in the arbitration provision. See the Record at Exhibit B to the Motion to Compel. In this case, however, the application is not one for relief under the bankruptcy laws—it is one for relief under another federal statute.

Similarly, compelling arbitration does not interfere with the Plaintiff's bankruptcy rights such as the automatic stay under 11 U.S.C. § 362. The Defendants are not trying to exercise a remedy or enforce a right against the Plaintiff, such as in the case of seeking relief from stay to pursue a foreclosure action. Instead, the Plaintiffs themselves raised the issue by filing the Adversary Proceeding in response to the Proof of Claim and by exercising their rights to bring a claim under TILA. Moreover, the Defendants sought the Bankruptcy Court's approval in attempting to enforce the arbitration provision by filing the Motion to Compel—the proper method under 11 U.S.C. § 362 and the Bankruptcy Code.

In addition, any arguments posed by the Debtor regarding undue expense and delay also do not provide sufficient reason to deny arbitration. In In re Durango Georgia Paper Co., 309 B.R. at 401, the plaintiff sought to enforce arbitration of a dispute relating to two promissory notes and a security agreement. The debtor filed an adversary proceeding seeking to avoid payment on the notes. The debtor requested that the court deny arbitration on the grounds that arbitration would cause an unnecessary expense to the debtor and would cause the debtor to incur additional expense. The court rejected the debtor's argument and compelled arbitration. The court noted first that the adversary proceeding did not implicate a substantive bankruptcy

right thereby demanding retention of the matter by the bankruptcy court, but was a general contractual dispute. See id. Moreover, the reasons given by the debtor to deny arbitration were general contractual arguments and were unrelated to the Bankruptcy Code. See id. Finally, the court rejected the debtor's argument about undue expense and time as arbitration is ordinarily used to avoid expensive and time-consuming litigation. See id. Likewise, in In re Winimo Realty Corp., 270 B.R. at 125, the court rejected an argument that arbitration should be denied because of the Bankruptcy Code's policy of favoring expeditious administration of the estate. The court noted that "if the presumption in favor of arbitration means anything, the mere possibility of delay cannot alone provide the Bankruptcy Court with discretion to deny arbitration." Id. Similarly, in this case, any argument by the Plaintiff regarding undue expense or delay should be rejected as grounds sufficient to deny arbitration. Further, the arbitration clause provides for the lender, not the borrower, to pay for the first full day of arbitration, with filing fees to be paid equally by both lender and the borrower and so the costs to the Plaintiff are minimal. See the Record, No. 3, at Exhibit B to the Motion to Compel. The arbitration clause in the Mortgage should be enforced.

## IV. CONCLUSION

For all of the foregoing reasons, MERS and Wells Fargo respectfully request that this Honorable Court overturn the ruling of the Bankruptcy Court, compel mediation and/or arbitration, and dismiss the within Adversary Proceeding or, in the alternative, stay the proceedings pending arbitration or mediation, and grant such other and further relief as this Court deems just and equitable.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AND WELLS FARGO BANK, N.A., AS TRUSTEE OF THE AEGIS ASSET BACKED SECURITIES TRUST 2004-3

By their Attorneys,

PARTRIDGE, SNOW & HAHN, LLP

Charles A. Lovell (#4004)
180 South Main Street
Providence, RI 02903
(401)861-8200/FAX(401)861-8210
cal@psh.com

Dated: March 15, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of March, 2006, the within Appellant's Brief was served, via hand-delivery upon the following interested parties as set forth below:

Jeffrey Dana, Esquire
RI Legal Services, Inc.
56 Pine Street, Fourth Floor
Providence, RI 02903
Leonard DePasquale, Esquire
Assistant U.S. Trustee
Office of the U.S. Trustee
10 Dorrance Street, Suite 910
Providence, RI 02903

John Boyajian, Esquire
Boyajian, Harrington & Richardson
183 Waterman Street
Providence, RI 02906

[signature]

845984_1