# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IN RE:<br><br>STEPHANIE D. BROWN,<br>Debtor | Case No. 05-12431-ANV<br>Chapter 13 |
| STEPHANIE D. BROWN,<br>Plaintiff/Appellee,<br><br>v.<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and WELLS FARGO BANK, N.A., AS TRUSTEE OF THE AEGIS ASSET BACKED SECURITIES TRUST 2004-3,<br>Defendants/Appellants. | A.P. No. 05-01052 |

**Case No. 1:05-cv-00523-s-LDA**

On Appeal by Order Granting Leave to Appeal from a
Judgment of the United States Bankruptcy Court
for the District of Rhode Island

---

**BRIEF OF PLAINTIFF-APPELLEE**

---

RHODE ISLAND LEGAL SERVICES
Jeffrey T. Dana, Esq. (#5580)
56 Pine Street, Fourth Floor
Providence, RI 02903
(401) 274-2652 Ext. 137
(401) 453-0310 FAX

# TABLE OF CONTENTS


**I. COUNTERSTATEMENT OF THE ISSUES PRESENTED AND THE APPLICABLE STANDARD OF APPELLATE REVIEW....................1**

A. Counterstatement of the Issues Presented..............................1

B. Applicable Standard of Appellate Review..............................1

**II. COUNTERSTATEMENT OF THE CASE AND FACTS..................4**

A. Counterstatement of the Case..........................................4

B. Facts and History of the Case..........................................5

**III. ARGUMENT.............................................................7**

A. Summary of Argument..................................................7

B. The Conflict Between the Bankruptcy Code and the Federal Arbitration Act Must be Resolved in Favor of Bankruptcy Court's Retaining Discretion to Reject Arbitration Enforcement..............10

C. The Resolution of the Adversary Proceeding Fundamentally Seeks the Adjudication of Federal Bankruptcy Rights and, as such, Should Not Be Referred to Arbitration..............................................15

D. The Bankruptcy Court for the District of Rhode Island's Previous Decisions in *Guild Music* and *Larocque* are Consistent with the Majority View that Bankruptcy Courts May Exercise Discretion to Deny Enforcement of Arbitration Agreements..........................21

E. The Recent Decisions of the Third Circuit (*Mintze*) and the Second Circuit (*Hill*) are Completely Inconsistent with Previous Case Law in Both Circuits and Likely Do Not Represent a Significant Trend Away From the Majority View that Bankruptcy Courts Have Discretion to Deny Arbitration..................................................24

F. Federal Public Policy Generally Favors, but Does Not Dictate, that Arbitration Provisions Be Enforced....................................35

**IV. CONCLUSION..........................................................38**

## TABLE OF AUTHORITIES

**Cases**

Braniff Airways Inc. v. United Air Lines Inc. (In re Braniff Airways)
33 B.R. 33 (Bankr. N.D. Tex. 1983)..........................................23

Casco N. Bank, N.A. v. DN Assocs. (In re DN Assocs.)
3 F. 3d 512 (1st Cir. (Me.) 1993).................................................2

Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.
885 F. 2d 1149 (3d Cir. 1989).................3,11,12,13,25,26,27,28,29,30,32,33

In re First Alliance Mortg. Co.
280 B.R. 246 (C.D. Cal. 2002)..................................................25

In re Gandy
299 F.3d 489 (5th Cir. 2002)....................................................24

In re Guild Music Corp.
100 B.R. 624 (Bankr.D.R.I. 1989)...........................8,9,16,17,22,23

In re Hemphill Bus Sales, Inc.
259 B.R. 865 (Bankr. E.D. Tex. 2001)........................................9,15,18,19

In re Hicks
285 B.R. 317 (Bankr. W.D. Okl. 2002).......................................25

In re Knepp
229 B.R. 821 (Bankr. N.D. Ala. 1999).............................................15,25

In re Laroche
969 F.2d 1299 (1st Circ. 1992).................................................................1

In re Lucas
312 B.R. 559 (Bankr. D. Md. 2004)..........................................24

In re Marcus Hook Dev. Park Inc.
943 F.2d 261 (1991)....................................................31,32

In re Martin
817 F.2d 175 (1987)....................................................3

In re Sacred Heart Hosp. of Norristown
181 B.R. 719 (Bankr. D.N.J. 1993)....................................27

In re Spectrum Information Technologies, Inc.
183 B.R. 360 (E.D.N.Y 1995)..........................................13

In re Statewide Realty Co.
159 B.R. 719 (Bankr. D.N.J. 1993)....................................28

In re Transport Associates, Inc.
263 B.R. 531(Bankr. W.D. Ky. 2001)..................................13

In re Trident Shipworks, Inc.
243 B.R. 130 (Bankr. M.D. Fla. 1999)................................9,19

Ins. Co. of N. Amer. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re National Gypsum Co.)
118 F.3d 1056 (5th Cir. (N.D. Tex.) 1997)............................3,28,29,30

Ionosphere Clubs, Inc. v. Air Line Pilots Association, Int'l (In re Ionosphere)
922 F.2d 984 (2d Cir. 1999)..........................................15

Larocque v. Citifinancial Mortgage Co.
283 B.R. 640 (Bankr. D.R.I. 2002)....................................22,23

Lombardi v. Domestic Loan and Investment Bank (In re Lombardi)
195 B.R. 569 (Bankr.D.R.I. 1996).....................................7,9

MBNA America Bank v. Hill
436 F.3d 104 (2nd Cir. (N.D.N.Y.) 2006)...........2,3,9,15,18,19,25,33,34,35

Mintze v. American General Financial Services, Inc. (In re Mintze)
434 F.3d 222 (3rd Cir. (E.D. Pa. 2006)...................25,27,28,30,31,32,33

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth
473 U.S. 614 (1985)....................11

Northern Pipeline Construction Co. v. Marathon Pipeline Co.
458 U.S. 50 (1982)....................30,31

Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery
330 F.3d 548 (3d Cir. 2003)....................12

Pardo v. Pacificare of Texas, Inc. (In re Apf Co.)
264 B.R. 344 (Bankr. D. Del. 2001)....................27

Pate v. Melvin Williams Mfd. Homes, Inc. (In re Pate)
198 B.R. 841 (Bankr.S.D. Ga. 1996)....................8

Rodrigues v. U.S. Bank (In re Rodrigues)
278 B.R. 683 (Bankr. D.R.I. 2002)....................9, 17, 20

Shearson/American Express, Inc. v. McMahon
482 U.S. 220 (1987)....................11

Singleton v. Wells Fargo Bank, N.A. (In re Singleton)
284 B.R. 322 (D.R.I.)....................1

Slipped Disc Inc. v. CD Warehouse Inc. (In re Slipped Disc, Inc.)
245 B.R. 342 (Bankr. N.D. Iowa 2000)....................9,19

Societe Nationale Algerienne Pour La Recherech, La Production, Le Transport, La Transformation et La Commercialisation des Hydrocarbures v. Distrigas Corp.
80 B.R. 606 (D.Mass. 1987) ....................13

Steele v. Ford Motor Credit Co.
783 F.2d 1016 (11th Cir. 1986)....................9

Tennessee Student Assistance Corp. v. Hood
541 U.S. 440 (2004)....................11

United States Lines, Inc. v. American S.S. Owners Mutual Protection and Indemnity Ass'n, Inc. (In re United States Lines)
529 U.S. 1038 (2000)....................................................3,9,13,15,26,31,32,35

United States v. Energy Resources Co.
495 U.S. 545 (1990).........................................................................12

Weinstock v. Frank, Frank & Cohen (In re Weinstock)
1999 WL 342764 (Bankr. E.D. Pa. May 25, 1999)...............................27

White Mountain Mining Company, LLC v. Congleton, LLC
403 F.3d 164 (4th Cir. 2005).............................................23,24

Williams v. BankOne, 291 B.R. 636 (E.D. Pa. 2003)...............................22

Zimmerman v. Continental Airlines
712 F.2d 55 (3d Cir. 1983)...........................................11,12,15,25

**Statutes**

9 U.S.C. § 3...........................................................................10

11 U.S.C. § 105.......................................................................12

11 U.S.C. § 502.......................................................................16

11 U.S.C. § 506.......................................................................18

11 U.S.C. § 1327.....................................................................32

11 U.S.C. § 1328.....................................................................32

28 U.S.C. § 157...................................................4,7,8,29,31

28 U.S.C. § 1334.....................................................................12

15 U.S.C. § 1635(f)......................................................................8

## I. COUNTERSTATEMENT OF THE ISSUES PRESENTED AND THE APPLICABLE STANDARD OF APPELLATE REVIEW

### A. Counterstatement of the Issues Presented

1. Where a Chapter 13 debtor, in conformity to her debt adjustment plan, initiates an adversary action against her mortgagee to challenge the nature and amount of the mortgagee's filed bankruptcy claim and the mortgagee concedes that the adversary action is a "core" matter in the bankruptcy court, does the bankruptcy court have the discretion not to enforce a mandatory arbitration provision in the mortgage contract?

2. Assuming that the bankruptcy court has such discretion, did the bankruptcy court in this case abuse its discretion when it concluded that the central importance of the adversary action to the feasibility of the debtor's reorganization and the potential interest of other creditors in the outcome of the adversary action warranted a decision not to compel arbitration of the adversary action?

### B. Applicable Standard of Appellate Review

The standard of review for appeals from decisions of bankruptcy judges "shall be taken in the same manner as appeals in civil proceedings generally are taken to the court of appeals from district court." Singleton v. Wells Fargo Bank, N.A. (In re Singleton), 284 B.R. 322 (D.R.I. 2002) citing In re Laroche, 969 F.2d

1299, 1301 (1st Cir. 1992). See also 28 U.S.C. 157(c)(1). Accordingly, a "de novo" standard of review is applied to questions of law and a "clearly erroneous" standard is applied to fact findings. Casco N. Bank, N.A. v. DN Assocs. (In re DN Assocs.), 3 F.3d 512, 515 (1st Cir. (Mass.) 1994). Congress implicitly intended that the clearly erroneous standard apply in appeals from decisions of bankruptcy judges in 'core' proceedings" because the de novo standard is only provided for "non-core proceedings." 28 U.S.C. 157(c)(1), Osborne v. Production Credit Association of River Falls, Wisconsin, 42 B.R. 988, 993 (1984). The use of the clearly erroneous standard has been deemed one of the "essential attributes of the judicial power of the United States" that has been vested in the bankruptcy court as a valid adjunct to Article III courts. Osborne v. Production Credit Association of River Falls, Wisconsin, 42 B.R. 988, 993 (1984) *citing* Northern Pipeline, 458 U.S. at 84-86. Although the Bankruptcy Amendments of 1984 reserved "most, if not all of the essential attributes of the judicial power" to the district courts, the decisions of the federal bankruptcy court are entitled to review under the clearly erroneous standard for core proceedings. Id. At 994.

In the case at bar, the clearly erroneous standard applies because the bankruptcy court's decision not to enforce arbitration is a core proceeding that raises "mixed questions of law and fact." MBNA America Bank, N.A. v. Hill, 436 F. 3d 104 (2nd Cir. 2006). The questions of fact arise from bankruptcy court's

process of analyzing the nature of the core proceeding to determine whether enforcement of an arbitration clause "would seriously jeopardize the objectives of the Bankruptcy Code;" therefore, the conclusion of the bankruptcy court should be reviewed under the clearly erroneous standard. In re U.S. Lines *citing* Hays & Co., 885 F.2d at 1161. Under this standard, the Court should reverse the decision of the bankruptcy court only if it "is left with the definite and firm conviction that a mistake has been committed" in retaining jurisdiction over the core proceeding. United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).

In Hill, the most recent appeal on a bankruptcy court decision, the court afforded the bankruptcy court judge "due deference" in determining whether arbitration would "seriously jeopardize a particular core bankruptcy proceeding." Id. In the First Circuit, bankruptcy courts have historically been "accorded wide discretion in connection with… the terms and conditions of the engagement of professionals." In re Martin, 817 R.2d 175 (1987). The In re Martin court reasoned that "the bankruptcy court judge is on the front line, in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such a decision entails." The In re DN Assocs. court stated that "when we scrutinize… discretionary judgments made by a bankruptcy judge,… we give considerable deference to the bankruptcy court." In re DN Assocs., 3 F.3d at 515.

## II. COUNTERSTATEMENT OF THE CASE AND FACTS

### A. Counterstatement of the Case

The Defendants have moved to compel mediation and /or arbitration of the Plaintiff's statutory claims asserted in this adversary proceeding. These claims, based on the federal Truth in Lending Act (hereafter "TILA"), have been asserted in the adversary proceeding as an objection to the Defendants' proof of claim filed in this Chapter 13 bankruptcy. The Plaintiff's adversary proceeding seeks a determination by the bankruptcy court as to whether the Defendants have an allowed secured claim based on the Plaintiff's exercise of the extended right of rescission under TILA.

This action is a core proceeding, and therefore implicates important substantive and procedural rights afforded to the parties under the Bankruptcy Code ("Code") and the Federal Rules of Bankruptcy Procedure. In filing her adversary action, the Plaintiff has requested that the Court make a determination as to the "allowance or disallowance of claims against the estate." See 28 U.S.C. § 157 (b)(1)(B). There can be no question that the Defendant, MERS, has filed a proof of claim in this Chapter 13 and has sought to have its claim administered in this case under sections 502 and 506 of the Code.

The claims for relief raised in the Plaintiff's objection and complaint based on the Defendants' violations of the TILA go to the fundamental bankruptcy issue

of whether the Defendants' claim should be allowed under section 502. In seeking disallowance of the Defendants' claim based on the Defendants' violation of the TILA, the Plaintiff is appropriately asserting that Defendants' claim is unenforceable.

**B. <u>Facts and History of the Case</u>**

On or about April 2004, Mike Rizzo, a loan originator for Aegis Lending Corporation, called Plaintiff/Debtor to advise her about consolidating her debts through refinancing. On May 20, 2004, the Plaintiff/Debtor executed the Contract in favor of Mortgage Electronic Registration Systems, Inc., as nominee for Aegis Funding Corporation in the original principal amount of One Hundred Ninety-Five Thousand Dollars ($195,000.00). On June 29, 2005, the Plaintiff/Debtor filed a chapter 13 case in the Bankruptcy Court, District of Rhode Island. On July 13, 2005 Plaintiff/Debtor sent a Truth-In-Lending rescission notice to Mortgage Electronic Registration Systems, Inc. ("MERS"). On July 15, 2005 Defendant, MERS, filed a secured claim in the amount of $211,314.66 which stated that this amount was the amount owed by the debtor on the Contract and the Mortgage. On August 3, 2005, Plaintiff/Debtor filed an adversary proceeding complaint against Defendant, MERS. On August 27, 2005, Plaintiff/Debtor filed an amended adversary proceeding complaint to include Wells Fargo Bank, N.A. ("Wells Fargo") as a co-defendant in the matter. On August 29, 2005, the Plaintiff again

exercised its extended right of rescission by forwarding to Defendant, Wells Fargo, a written notice of rescission.

On November 2, 2005, the Defendants sent a set of Interrogatories to Plaintiff. On November 2, 2005, the Defendants sent a set of Requests for Admissions to Plaintiff. On November 2, 2005, the Defendants filed a Motion to Compel Mediation and/or Arbitration. *See* the Record, the Motion to Compel. Plaintiff/Debtor filed an objection to the Motion. *See* the Record, Designation No. 4, Plaintiff's Objection to the Motion to Compel. On December 7, 2005, the Bankruptcy Court heard oral argument on the Motion and entered an Order Denying Motion/Application (Doc#17) After Hearing. The Bankruptcy Court ruled that the litigation could proceed.

On December 15, 2005, the Defendants filed a Motion for Leave to Appeal and Memorandum. Plaintiff/Debtor objected to the Motion. See the Record, Designation No. 5, Defendants' Notice of Appeal filed December 15, 2005; Designation No. 6, Defendants' Motion for Leave to Appeal and Memorandum in Support thereof filed December 15, 2005. After oral argument in this Court, on February 14, 2006, Defendants' Motion for Leave to Appeal was granted.

## III. ARGUMENT

### A. Summary of Argument

In the normal course of bankruptcy proceedings, bankruptcy courts are routinely asked to make determinations regarding the allowance or disallowance of claims against the bankruptcy estate, as well as the extent or priority of such claims. This is a fundamental and exclusive aspect of the bankruptcy court's *in rem* jurisdiction over property of the debtor's estate. In making these determinations, bankruptcy courts are also typically called upon to resolve claim disputes in adversary proceedings by applying applicable non-bankruptcy law. This adversary proceeding brought by the Plaintiff seeks a declaration that the mortgage on her home held by one or more of the Defendants is void. In re Lombardi, 195 B.R. 569 (Bankr. D.R.I. 1996) (mortgage declared void based on debtors' exercise of TILA extended right of rescission). As such, this action seeks a determination of the "validity, extent or priority" of the Defendants' lien. 28 U.S.C. §157 (b)(1)(K). Defendants correctly acknowledge that this matter is a core proceeding. Since this matter is clearly a core proceeding, the bankruptcy court appropriately exercised discretion to retain jurisdiction rather than refer it to arbitration. In re Guild Music Corp., 100 B.R. 624 (Bankr. D.R.I. 1989).

The Plaintiff seeks a claim for statutory damages based on Defendants' violation of the TILA. To the extent that the Plaintiff is seeking any affirmative

recovery against the Defendants, this also is a core proceeding as it involves "counterclaims by the estate against persons filling claims against the estate." 28 U.S.C. § 157(b)(1)(C); *see, e.g.*, Pate v. Melvin Williams Mfd. Homes, Inc. (In re Pate), 198 B.R. 841 (Bankr. S.D. Ga. 1996)(TILA adversary proceeding filed against creditor who filed proof of claim in chapter 13 case is core based on 28 U.S.C.§ 157(b)(1)(C).

This action seeks to enforce the Plaintiff's exercise of the extended right of rescission under the TILA. In a credit transaction secured by a consumer's home such as the case here, the creditor must provide the consumer with accurate TILA disclosures and the notice of right to cancel. If the material disclosures or the notice of right to cancel are not provided as required, the borrower's right of rescission expires at the earliest of the sale of the property or three years from the date of consummation. 15 U.S.C. § 1635(f). Failure to provide accurate material disclosures, even if that failure is small or technical in nature, extends the right to rescind until it is terminated by expiration of the three year period or by transfer of the property. *See* Steele v. Ford Motor Credit Co., 783 F. 2d 1016 (11 th Cir. 1986); In re Rodrigues, 278 B.R. 683 (Bankr. D.R.I. 2002); In re Lombardi, 195 B.R. 852 (Bankr. E.D.Pa. 1989).

The Bankruptcy Code provides for one forum to resolve all disputes affecting the administration of a party's bankruptcy estate, with the goal of swift adjudication of claims brought by and against the estate. In re Hemphill Bus Sales, Inc., 259 B.R. 865 (Bankr. E.D. Tex. 2001); In re Slipped Disc, Inc., 245 B.R. 342, 344 (Bankr. N.D. Iowa 2000); In re Trident Shipworks, Inc., 243 B.R. 130, 132 (Bankr. M.D. Fla. 1999). For this reason, most courts have held that even when the parties have signed an arbitration agreement, if the issue under dispute is a core proceeding in the bankruptcy, the bankruptcy court has discretion in determining whether to refuse to compel arbitration. In re United States Lines, Inc., 197 F. 3d 631, 640 (2nd Cir. 1999), *see also,* Guild Music Corp., 100 B.R. 624 (Bankr. D.R.I. 1989)(court retains discretion to decline to enforce arbitration even as to non-core matters).

This adversary proceeding unquestionably involves a core proceeding. As a result and for the reasons stated below, this Court should affirm the Bankruptcy Court's exercise of its discretion in favor of resolving the dispute between the parties and the authority of the Bankruptcy Court to determine the amount, validity and extent of the Defendants' claim and related lien.

**B. <u>The Conflict Between the Bankruptcy Code and The Federal Arbitration Act Must Be Resolved In Favor of Bankruptcy Court's Retaining Discretion to Reject Arbitration Enforcement.</u>**

A motion to compel arbitration raised by a party to a bankruptcy adversary proceeding brings into play two sometimes conflicting federal statutes, the Federal Arbitration Act ("FAA") and the Bankruptcy Code. The FAA provides that when the parties before a court entered into a valid and enforceable pre-dispute arbitration agreement, the court is supposed to halt its proceedings while an arbitrator adjudicates the dispute. 9 U.S.C. § 3. However, the Supreme Court has also noted that the FAA may well be overridden by other federal statutes in some circumstances:

> Just as it is the congressional policy manifested in the Federal Arbitration Act that requires courts liberally to construe the scope of arbitration agreements covered by that Act, it is the congressional intent expressed in some other statute on which the courts must rely to identify any category of claims as to which agreements to arbitrate will be held unenforceable. <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth</u>, 473 U.S. 614, 627 (1985).

Thus, "[l]ike any other statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command." <u>Shearson/American Express,</u>

Inc. v. McMahon, 482 U.S. 220, 226 (1987). The Supreme Court has further noted that other federal statutes might override the FAA without any explicit statement that the other statutes were to override the FAA -- congressional intent to restrict or prohibit arbitration of statutory claims may be "deducible" from a statute's text, legislative history or underlying purposes. Mitsubishi, 473 U.S. at 628.

The structure and purpose of federal bankruptcy jurisdiction does, in fact, conflict with the FAA in some circumstances. Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149 (3d Cir. 1989); Zimmerman v. Continental Airlines, Inc., 712 F.2d 55 (3d Cir. 1983). Bankruptcy is a unique *in rem* proceeding, unlike all others, in which the federal courts are granted exclusive jurisdiction over the debtor's property, and over the "estate" created by the filing of a bankruptcy petition. Tennessee Student Assistance Corp. v. Hood, 541 U.S. 440, 447-48 (2004). "A bankruptcy court is able to provide the debtor a fresh start . . ., despite the lack of participation of all of his creditors, because the court's jurisdiction is premised on the debtor and his estate, and not on the creditors." *See also* Central Virginia Community College v. Katz, 126 S. Ct. 990 (2006). The bankruptcy courts are delegated broad powers to administer the bankruptcy estate, 28 U.S.C. §§ 1334, 157, and have jurisdiction to "issue *any* order, process, or judgment that is necessary or appropriate to carry out the provisions of the [the Bankruptcy Code]. 11 U.S.C. § 105(a) (emphasis added). They are regarded as

equitable tribunals imbued with "broad authority to modify debtor-creditor relationships." Official Committee of Unsecured Creditors of Cybergenics Corp., 330 F.3d 548, 567 (3d Cir. 2003) (quoting United States v. Energy Resources Co., 495 U.S. 545, 549(1990)).

After tracing the unique purposes and history of the Bankruptcy Code, Zimmerman v. Continental Airlines, Inc., *supra*, held that it is up to "the sound discretion" of the bankruptcy courts to weigh the underlying and conflicting purposes of the Bankruptcy Code and the FAA, as they impact on the particular case, when confronted with a motion to compel arbitration. That rule was modified by the Court's subsequent decision in Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., *supra*, holding that, bankruptcy courts should not enforce arbitration clauses in the context of a dispute arising from bankruptcy-derived rights, 885 F.2d at 1153, but generally, should enforce arbitration clauses in the context of "non-core" proceedings to enforce pre-petition, nonbankruptcy-derived rights, unless doing so "would seriously jeopardize the objectives of the Code." Id. at 1161.

Thus, Hays essentially created a three-tier analytic framework for deciding how bankruptcy judges should resolve conflicts between the bankruptcy policy of centralized debtor-creditor adjudications and the arbitration policy of decentralized, private adjudication. The first tier involves claims derived from the

Bankruptcy Code rather than from pre-petition contracts; according to Hays, such claims are, by definition, nonarbitrable. The third tier, representing the opposite extreme, involves non-bankruptcy-derived claims that are *non-core*; Hays held that in such circumstances arbitration provisions should ordinarily be enforced. What Hays left open–the proper handling of second-tier disputes between those two extremes, i.e., pre-petition claims not derived from bankruptcy law, but falling within the court's *core* jurisdiction–is the subject of this appeal.

The Second Circuit has expressed the tension between the FAA and the Bankruptcy Code with particular clarity: the statutes "present a conflict of near polar extremes: bankruptcy policy exerts an inexorable pull towards centralization while arbitration policy advocates a decentralized approach towards dispute resolution." United States Lines, Inc. V. American Steamship Owners Mutual Protection and Indemnity Ass'n, Inc. (In re United States Lines), 197 F.3d 631, 640 (2d Cir. 1997) (quoting Societe Nationale Algerienne Pour La Recherche, La Production, Le Transport, La Transformation et La Commercialisation des Hydrocarbures v. Distrigas Corp., 80 B.R. 606, 610 (D. Mass. 1987)). *See also In re Spectrum Information Technologies, Inc.,* 183 B.R. 360 (E.D.N.Y. 1995) ("This federal arbitration policy must be considered in light of the Bankruptcy Code, particularly section 362, which is framed to consolidate jurisdiction of a debtor's property so as to ensure an orderly and expeditious rehabilitation of the debtor or

the liquidation of its assets."

The federal presumption that valid arbitration agreements should be enforced is often in direct conflict with the goal of bankruptcy jurisdiction to have one centralized forum for the prompt resolution of disputes affecting the bankruptcy estate. Zimmerman v. Continental Airlines, Inc., 12 F.2d. 55 (3d Cir. 1983); In re Hemphill Bus Sales, Inc., 259 B. R. 865( Bankr. E.D. Tex. 2001); In re Knepp, 229 B.R. 821 (Bankr. N.D. Ala. 1999) (courts finds "inherent conflict" between FAA and Bankruptcy Code). Permitting arbitration to proceed independent of a bankruptcy case can subject debtors and other interested parties to piecemeal litigation, depletion of estate assets on arbitration costs, and inequitable treatment of claims. Such results are contrary to the broad grant of authority given to bankruptcy courts to stay all actions or proceedings against the debtor so that a fair administration of the debtor's estate, including a balancing of the diverse parties' interests, can take place in a single forum. In re United States Lines, Inc., 197 F.3d 631, 640(2d Cir. 1999) *quoting* In re Ionosphere, 922 F. 2d 984, 989 (2d Cir. 1990) (one of the primary purposes of bankruptcy "effectuated by Sections 362 and 105 of the Code" is to "allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that the reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas.")

### C. The Resolution of the Adversary Proceeding Fundamentally Seeks the Adjudication of Federal Bankruptcy Rights and, as such, Should Not Be Referred to Arbitration

The dispute relating to the Plaintiff's mortgage with Defendants is inextricably tied to this Chapter 13 bankruptcy proceeding. It will impact on whether the Plaintiff will be able to retain her home and maintain payments under her proposed Chapter 13 Plan, whether her Chapter 13 Plan will be confirmed, whether the Plaintiff will obtain a fresh start, and it will affect how creditors (not simply Defendants) will be provided for under her Plan. Thus, referring this matter to arbitration would not be consistent with the purpose of the Bankruptcy Code.

Section 502(b) of the Code mandates a procedure for the bankruptcy court to determine the amount and allowance of claims if an objection to the claim is filed. It provides that "the **court**, after notice and hearing, shall determine the amount of such claim ... and shall allow such claim in such amount...." *See also*, Fed.R.Bankr.Proc. 3007. The bankruptcy court may disallow the claim if it is "unenforceable against the debtor" based on the contract between the parties or "applicable law," such as the claims in this case based on the violation of TILA. 11 U.S.C. § 502(b)(1). As the Court correctly observed in Guild Music, the determination of whether a creditor's claim should be "allowed" is a "separate bankruptcy issue which can only be determined in this Court." Guild Music, 100

B.R. at 628. This claims allowance process goes to "the very purpose of bankruptcy," which is to "modify the rights of debtors and creditors." 1 Collier on Bankruptcy, ¶ 3.02(2)(15th ed. rev. 2005).

Section 506 of the Code additionally provides that to the extent any portion of a creditor's claim is allowed, the bankruptcy court can be requested to determine, as was done in this case, whether it should be treated as an "allowed secured claim." Once again, this is a concept that is unique to bankruptcy law and it subject to a well-defined judicial procedure. Section 506(a) provides that the "value" of the creditor's interest used to determine whether a claim is secured or unsecured is "determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use on a plan affecting such creditor's interest." *See also*, Fed.R.Bankr.Proc. 3013.

The outcome of this adversary proceeding will have a critical impact on the Plaintiff's Chapter 13 Plan. If the Plaintiff is successful with her challenge to the Defendants' lien based on TILA rescission, the Defendants' claim would be treated as un unsecured claim. In re Rodrigues, 278 B.R. 683 (Bankr.D.R.I. 2002). It will determine whether the Defendants are entitled to any of the protections afforded to residential mortgage holders under section 1322(b)(2). It will also determine whether the Defendants are precluded from recovering as a secured claim (or

otherwise) any pre-petition foreclosure expenses, attorney's fees or other costs related to the foreclosure. 11 U.S.C. § 506(b). And it will determine the priority of any Defendants' claim under section 507 of the Code.

All of these determinations "go to the very heart and purpose of the Bankruptcy Code: the expeditious and equitable distribution of the assets of the debtor's estate and the Debtor's opportunity for a fresh start." Hemphill Bus, 259 B.R. at 871 (*footnotes omitted*). The resolution of this adversary proceeding will determine the success or failure of the Plaintiff's Chapter 13 Plan. Though applicable non-bankruptcy law, such as Plaintiff's TILA claims, must be considered (as Congress instructed in section 502(b)), this action fundamentally seeks the adjudication of federal bankruptcy rights. As such, it should not be referred to arbitration.

Application of the factors that bankruptcy courts generally consider in exercising discretion whether to enforce an arbitration agreement also compels retention of jurisdiction by this Court. These factors include the degree to which (1) the nature and extent of the litigation and evidence would make the judicial forum preferable to arbitration, (2) the extent to which special expertise is necessary to resolve the dispute and, (3) the extent to which the bankruptcy court may more efficiently and economically resolve the dispute, and without depleting estate assets. *See, e.g.*, In re Hemphill Bus Sales, Inc., 259 B.R. 865 (Bankr. E.D.

Tex. 2001); In re Slipped Disc Inc., 245 B.R. 342 (Bankr. N.D. Iowa 2000); In re Trident Shipworks, Inc., 243 B.R. 130 (Bankr. M.D. Fla. 1999); In re Edgerton, 98 B.R. 392 (Bankr. N.D. Ill. 1989). Another factor given considerable weight is that bankruptcy courts can more appropriately consider the interests of creditors who are not a party to the arbitration agreement and who would likely be precluded from participating in the arbitration forum. *See*, *e.g.*, Hemphill Bus, *supra*, 259 B.R. 865.

As to the first factor, because this litigation is so closely related to the Plaintiff's Chapter 13 Plan, it is clearly preferable for this Court to oversee and ultimately resolve the adversary proceeding. Confirmation of the Plaintiff's Plan has been deferred pending the outcome of this litigation. Given the interrelationship between the two proceedings, both matters should be handled by the bankruptcy court.

There can be no question, as to the second factor, that the issues raised in this adversary proceeding require the special expertise of the bankruptcy court. Arbitrators clearly do not have expertise in deciding issues such as the "allowance" of claims or "allowed secured" status or "priority" of a claim in bankruptcy. More importantly, these issues are within the exclusive jurisdiction of the bankruptcy

court and should be "protect[ed] from collateral attack from another forum." In re Cavanaugh, 271 B.R. 414, 424 (Bankr.D.Mass. 2001).

Even the TILA rescission issue requires special bankruptcy expertise. Unlike the exercise of rescission in a non-bankruptcy context, rescission in bankruptcy results in not only the voiding of the creditor's mortgage, but the treatment for bankruptcy purposes of the creditor's claim as an unsecured claim. This in turn impacts on whether any tender obligations exist in the bankruptcy case on the part of debtor.

Most bankruptcy courts, including the Bankruptcy Court for the District of Rhode Island, have held that upon a TILA rescission by a debtor in bankruptcy, the mortgage is rendered void and the creditor's claim, if any, is treated as an unsecured claim. In re Rodrigues, 278 B.R. 683 (Bankr.D.R.I. 2002); Celona v. Equitable Nat. Bank, 98 B.R. 705 (E.D. Pa. 1989); In re Whitley, Inc., 177 B.R. 142 (Bankr.D.Mass. 1995); In re Myers, 175 B.R. 122 (Bankr.D.Mass. 1994); In re Brown, 134 B.R. 134 (Bankr. E.D. 1991); In re Perkins, 106 B.R. 863 (Bankr. E.D. 1989); In re Chancy, 33 B.R. 355 (Bankr.N.D. Okla. 1983); In re Piercy, 18 B.R. 1004 (Bankr.W.D.Ky. 1982); In re Wright, 11 B.R. 590 (Bankr.S.D.Miss. 1981). These courts have uniformly held that the "judicial preconditioning of

cancellation of the creditor's lien on the consumer's tender is inappropriate in bankruptcy cases." Celona, supra, 98 B.R. at 707.

The compelling justification for this treatment of rescission in bankruptcy is described more fully by the court in Piercy:

> Unlike the situation absent bankruptcy, there is a legitimate, legal impediment to the debtor's reciprocal performance. It would be palpably unfair to deny the relief to which a consumer is entitled under TIL because the consumer has also availed himself of bankruptcy relief. To do so would require that the consumer choose between bankruptcy and TIL, something neither form of statutory relief contemplates.
>
> In re Piercy, supra, 18 B.R. 1004, 1007.

The third factor also favors retention by the bankruptcy court as it can more efficiently and expeditiously resolve this case. The bankruptcy court in this district is noted for its rigorous scheduling deadlines and prompt adjudication of contested matters, whereas the arbitration outcome is uncertain. Moreover, it would be inefficient and a waste of judicial resources for an arbitrator to decide some but not all of the issues raised in this adversary proceeding, as the bankruptcy court would ultimately need to resolve the bankruptcy issues. Given that all of the Plaintiff's disposable income is to be devoted to her Chapter 13 Plan, any costs imposed in the arbitration forum in order to have the matter prosecuted will also impact on her Plan.

The fourth factor also strongly compels the denial of a referral to arbitration. Unlike an arbitrator, the bankruptcy court must consider the impact of this adversary proceeding on other creditors. The amount and treatment of the Defendants' claim, and the issue of whether the Plaintiff will retain her home, all necessarily affect the distribution and treatment of other creditors' claims, particularly the Plaintiff's unsecured creditors. *See* Williams v. BankOne, 291 B.R. 636 (E.D. Pa. 2003).

**D. The Bankruptcy Court for the District of Rhode Island's Previous Decisions in *Guild Music* and *Larocque* are Consistent With The Majority View That Bankruptcy Courts May Exercise Discretion to Deny Enforcement of Arbitration Agreements.**

In Larocque v. Citifinancial Mortgage Co., 283 B.R. 640, 642 (Bankr. D.R.I. 2002), Judge Votolato held that a Bankruptcy Court retains the discretion to deny or compel arbitration where two competing directives exist, namely, the FAA and the Bankruptcy Code. An important aspect of the Court's conclusion in that case is that the "...adversary proceeding is a core matter, which *strongly favors* it staying in the bankruptcy Court." (*emphasis added*) Id. At 642. In Larocque, the Court did not merely state that a Bankruptcy Court has the discretion to retain such a matter, but that should retain jurisdiction over litigation. Id. At 642.

In Guild Music, the Court adopted the reasoning of Zimmerman that the Bankruptcy Code " impliedly modifies" the FAA, and concluded that "the issues in dispute involve "core" bankruptcy matters, which are the exclusive subject matter of the bankruptcy court, such issues may not be referred to arbitration." Guild Music, 100 B.R. at 629, citing In re Braniff Airways, 33 B.R.33 (Bankr. N.D. Tex. 1983). As to non-core matters, this Court held that "it is within the Court's discretion to determine whether the bankruptcy court or the arbitration panel is the appropriate forum for deciding [the non-core issue]." Guild Music, 100 B.R. at 629.

The Larocque case is one of many fairly recent cases in which courts have addressed the issue of whether a bankruptcy court judge has discretion to retain jurisdiction of a matter by refusing to enforce a contract's arbitration clause. It would appear that a majority of courts that have addressed the issue have answered in the affirmative. In White Mountain Mining Company, LLC v. Congleton, LLC, 403 F.3d 164 (4th Cir. 2005), the principal of a corporate Chapter 11 debtor brought an adversary proceeding against the debtor and an investor seeking determination as to whether pre-petition cash advances were debt or equity. The bankruptcy judge denied the investor's motion to compel arbitration. The district court affirmed and the Fourth Circuit also affirmed, holding that the claim was a

core proceeding and that the bankruptcy judge had discretion to deny arbitration.

The court focused on the third McMahon prong. It concluded that arbitration of the core proceeding would present an inherent conflict with the Bankruptcy Code because "the very purpose of bankruptcy is to modify the rights of debtors and creditors and Congress intended to centralize disputes about a debtor's assets and legal obligations in the bankruptcy courts." Congleton, 403 F.3d at 169. Furthermore, "[a]rbitration is inconsistent with centralized decision-making because permitting an arbitrator to decide a core issue would make debtor-creditor rights 'contingent upon an arbitrator's ruling' rather than the ruling of the bankruptcy judge assigned to hear the debtor's case." Id.

The Fifth Circuit also has held that the court is permitted to assess whether arbitration would be consistent with the purpose of the Bankruptcy Code. In Re Gandy, 299 F.3d 489 (5th Cir. 2002). In fact, the concept that a bankruptcy court judge maintains discretion to determine whether arbitration of a "core" bankruptcy matter would conflict with the purposes of the Bankruptcy Code would seem to be a widely held one. Recent decisions in Maryland, California, Oklahoma and Alabama all support this view. *See* In Re Lucas, 312 B.R. 559 (Bankr. D. Md. 2004); In Re First Alliance Mortg. Co., 280 B.R. 246 (C.D. Cal. 2002); In Re

Hicks, 285 B.R. 317 (Bankr. W.D. Oklahoma 2002); In Re Knepp, 229 B.R. 821 (Bankr. N.D. Ala. 1999).

**E. The Recent Decisions of the Third Circuit (Mintze) and the Second Circuit (Hill) are Completely Inconsistent with Previous Case Law in Both Circuits and Likely Do Not Represent a Significant Trend Away from the Majority View that Bankruptcy Courts Have Discretion to Deny Arbitration**

The Third Circuit has taken the lead in articulating the appropriate balance that should be made between the conflicting purposes of the FAA and the bankruptcy laws, beginning with Zimmerman v. Continental Airlines, Inc., *supra*. After tracing the unique purposes and history of the Bankruptcy Code, that decision held that it is up to "the sound discretion" of the bankruptcy courts to weigh the underlying and conflicting purposes of the Bankruptcy Code and the FAA, as they impact on the particular case, when confronted with a motion to compel arbitration. That rule was modified by the Court's subsequent decision in Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., *supra*, holding that, bankruptcy courts should not enforce arbitration clauses in the context of a dispute arising from bankruptcy-derived rights, 885 F.2d at 1153, but generally, should enforce arbitration clauses in the context of "non-core"proceedings to enforce pre-petition, nonbankruptcy-derived rights, unless doing so "would seriously

jeopardize the objectives of the Code." Id. at 1161.

Thus, Hays essentially created a three-tier analytic framework for deciding how bankruptcy judges should resolve conflicts between the bankruptcy policy of centralized debtor-creditor adjudications and the arbitration policy of decentralized, private adjudication. The first tier involves claims derived from the Bankruptcy Code rather than from pre-petition contracts; according to Hays, such claims are, by definition, nonarbitrable. The third tier, representing the opposite extreme, involves non-bankruptcy-derived claims that are *non-core*; Hays held that in such circumstances arbitration provisions should ordinarily be enforced. What Hays left open–the proper handling of second-tier disputes between those two extremes, i.e., pre-petition claims not derived from bankruptcy law, but which fall within the court's *core* jurisdiction–is the subject of this appeal.

The reasoning of the Second Circuit in United States Lines v. American Steamship Owners Mutual Protection and Indemnity Assoc., Inc. (In re Unites States Lines, Inc.), 197 F.3d 631 (2d Cir. 1999) was grounded in a recognition of a policy conflict "of near polar extremes" between the Bankruptcy Code and the Federal Arbitration Act ("'bankruptcy policy exerts an inexorable pull towards centralization while arbitration policy advocates a decentralized approach towards dispute resolution,'" 197 F.3d at 640 (citation omitted)), and a reliance on this Court's decision in Hays. The Second Circuit cited Hays for the proposition that,

in the case of, a non-core bankruptcy proceeding, a pre-bankruptcy arbitration agreement should ordinarily be enforced, but that, in the case of a core proceeding, the court "must still 'carefully determine whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing an arbitration clause.' Hays, 885 F.2d at 1161." 197 F.3d at 640. The key factor which, according the Second Circuit, made the bankruptcy court's decision appropriate was that the debtor's insurance rights under the policies in dispute represented the most important asset in the estate and the only potential source of cash available for distribution to the employee creditors. Id. at 638. Because the bankruptcy court in that case had "properly considered the conflicting policies in accordance with law," the Second Circuit held that the district court erred when it failed to "show due deference" to the bankruptcy court's decision. Id. at 641.

Until the panel decision in the Mintze case, Mintze v. American General Financial Services, Inc., 434 F. 3d 222 (3rd Cir. 2006), the Second Circuit's interpretation of the Hays decision represented the virtually unanimous view of the courts in the Third Circuit that have applied Hays over the sixteen years since Hays was decided. *See, e.g.,* Pardo v. Pacificare of Texas, Inc. (In re Apf Co.), 264 B.R. 344, 362-365 (Bankr. D.Del. 2001); Weinstock v. Frank, Frank & Cohen (In re Weinstock), 1999 WL 342764, *7 (Bankr. E.D. Pa. May 25,1999); In re Sacred Heart Hosp. of Norristown, 181 B.R. 195, 202 (Bankr. E.D.Pa. 1995); In re

Statewide Realty Co., 159 B.R. 719, 722 (Bankr. D.N.J. 1993). Under that jurisprudence, Hays effectively stands for proposition that, in what is described above as a "second-tier" dispute, involving pre-petition claims not derived from bankruptcy law, but which fall within the court's core jurisdiction over the debtor's estate, bankruptcy courts should engage in a careful, discretionary analysis that balances the competing jurisdictional policies present in the particular case before them, and should not enforce arbitration agreements when such a result would "adversely affect" the purposes of the Bankruptcy Code. Hays, 885 F.2d at 1161.

The panel in the Mintze case decided that the core/non-core distinction has no bearing whatsoever on the bankruptcy court's power to deny enforcement of an arbitration clause. Id. at 229. Determining, first, that the Supreme Court's McMahon standard applies to all statutory claims brought in bankruptcy court–a premise that Appellant has never contested–, the Panel then stated as follows:

> Second, the Hays decision did not seek to distinguish between core and non-core proceedings; rather, it sought to distinguish between causes of action derived from the debtor and bankruptcy actions that the Bankruptcy Code created for the benefit of the creditors of the estate. *See* Nat'l Gypsum, 118 F.3d at 1068 (quoting In re Statewide, 159 B.R. at 722) (holding that the relevant distinction in Hays is that between debtor-derivative claims and Bankruptcy Code established claims, and not the distinction between core and non-core proceedings).

Id. at 230.

This conclusion conflicts with the Hays precedent, not just from the standpoint of how Hays has been applied by the bankruptcy courts for years, but also from the very words of Hays, that repeatedly characterized the dispute at issue as being "non-core," and specifically emphasized the difference in character between, on the one hand, the non-core, securities fraud claim involved there and, on the other, a core bankruptcy dispute:

> The non-§544(b) claims made by Hays involve non-core proceedings *because they do not involve: the administration of the estate; the allowance of claims against the estate*; the voidance of preferences or fraudulent transfers; determinations as to dischargeability of debts; *priorities of liens; or confirmation of a plan*, etc. *See* 28 U.S.C. § 157(b)(2).

Hays & Co. v. Merrill Lynch, *supra*, 885 F.2d at 1156, n.9 (emphasis added).

The only authority cited by the Panel for its premise that the core/non-core distinction is not relevant to the bankruptcy court's power *vis a vis* a mandatory arbitration clause was the Fifth Circuit's decision in Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum), 118 F.3d 1056, 1068 (5th Cir. 1997). This reliance on National Gypsum was misplaced, and was based on a misreading of both that decision and Hays.

National Gypsum involved an adversary action by a reorganized debtor seeking a determination that a creditor's post-discharge collection

activities were in violation of the debtor's confirmed plan and its discharge order. The bankruptcy court had rejected the creditor's effort to compel arbitration of the dispute, and both the district court and Fifth Circuit affirmed. In doing so, the Fifth Circuit relied on Hays. Referring to "the consistent reluctance to permit arbitration of actions brought to adjudicate *bankruptcy rights*," as opposed to pre-petition contractual rights, the Fifth Circuit, like this Court in Hays, reasoned that "[a]rguably, these actions are simply beyond the coverage of most, if not all, arbitration provisions." 118 F.3d at 1068. To the extent that National Gypsum can be read as implying that, in some cases, arbitration of bankruptcy-derived rights might still be appropriate, Hays held to the contrary. See Hays & Co. v. Merrill Lynch, *supra*, 885 F.2d at 1153 (holding that bankruptcy-derived claims are completely nonarbitrable). To the extent that the Panel in Mintze read dicta in National Gypsum as suggesting that bankruptcy-derived adversary disputes are the *only* category of core disputes that might involve a conflict between the federal policies of arbitration and bankruptcy, the Third Circuit made no such distinction in Hays.

One of the bases for the Third Circuit's revisiting of the Zimmerman decision in Hays was the intervening decision of Congress, in response to the Supreme Court's Marathon Pipeline decision, to retreat somewhat from

the original jurisdictional structure of the Bankruptcy Code that had consolidated all adjudicatory power in the newly created bankruptcy courts. 885 F.2d at 1159. Because non-core proceedings were, as a result of the 1984 amendments, subjected to *de novo* review by the district court, this Court reasoned, the appearance of conflict between bankruptcy and arbitration policies in the case of non-core disputes was vitiated.

The principal holding of Marathon was the creation of a jurisdictional distinction between "the restructuring of debtor-creditor relations, which is at the *core* of the federal bankruptcy power . . . from the adjudication of state created private rights, such as the right to recover damages" that was at issue in Marathon. Northern Pipeline Construction Co. v. Marathon Pipeline Co., 458 U.S. 50, 71 (1982) (emphasis added). In response to Marathon, the jurisdictional scheme devised by Congress certainly did not reject the possibility that suits derived entirely from state or other non-bankruptcy law could still be classified as core matters. Indeed, the jurisdictional statute explicitly states the opposite principle. *See* 28 U.S.C. § 157(b)(3) ("A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.") Instead, Congress chose a more practical approach in which the inquiry "hinges on 'the nature of the proceeding.'" In re United States Lines, *supra*.

See In re Marcus Hook Dev. Park Inc., 943 F.2d at 267 (proceeding can be core to the bankruptcy court's jurisdictional power either if it invokes a substantive right established by the Bankruptcy Code *or* is a proceeding "that, by its very nature, could arise only in the context of a bankruptcy case").

The Mintze panel correctly interpreted McMahon as requiring bankruptcy courts to consider whether Congress intended, in the particular context before them, to preclude enforcement of a contractual arbitration provision. However, where the panel went wrong was its failure to look beyond the substantive law raised in the Mintze objection to the defendant in that case's claim to the unique bankruptcy context in which those substantive rights were being litigated, a context "that, by its very nature, could only arise in a bankruptcy case."Marcus Hook Dev. Park Inc., *supra.* The central objective of chapter 13 is "to facilitate adjustments of all types of debts of individuals with regular income." 8 Collier on Bankruptcy ¶ 1300.02. It is the exclusive responsibility of the bankruptcy judge to adjudicate the extent to which a creditor claim will be "allowed," based, among other things, on non-bankruptcy law defenses. 11 U.S.C. § 502(b)(1). Similarly, the bankruptcy judge must hold a hearing on confirmation of a chapter 13 plan at which time any creditor objections

would be adjudicated. 11 U.S. § 1324. The provisions of a confirmed plan bind the debtor and all creditors, regardless of their participation, 11 U.S.C. § 1327(a), and completion of the plan will produce a discharge of all debts provided for in the plan that are not otherwise excepted from discharge by the Code. 11 U.S.C. § 1328(a). That this delegation of broad adjudicatory authority to the bankruptcy courts can conflict with the purposes of the F.A.A., in ways that would not exist outside the bankruptcy context, is settled law. *See also* Hays; United States Lines; White Mountain Mining Co.

The Mintze panel's opinion departed from this settled authority, creating an unnecessary conflict with the Second and Fourth Circuits, and departing from the spirit, if not the letter, of the Third Circuit's decision in Hays (which decision, ironically, formed the foundation of the three-tier framework adopted by those two circuits). This departure represents a break from sixteen years of jurisprudence that had guided the lower courts in the Third Circuit.

In MBNA America Bank, N.A. v. Hill, 436 F. 3d 104 (2nd Cir. 2006), a Chapter 7 debtor brought an adversary proceeding alleging violations of §362(h) of Bankruptcy Code. The Chapter 7 was filed in 2001, the adversary proceeding was brought in 2002, and the debtor was discharged in 2003. Notably, the suit was brought as a class action. MBNA moved to dismiss in favor of arbitration and the bankruptcy court refused. The district court affirmed the bankruptcy court and the Second Circuit reversed, holding that even though the adversary proceeding was a "core" bankruptcy proceeding, because it would occur post-discharge, arbitration would not conflict with the Bankruptcy Code.

The analysis focused on the third McMahon prong factor: whether there was "an inherent conflict between arbitration and the statute's underlying purposes." Hill, Id. at 108 (quoting McMahon, 482 U.S. at 227). With regard to the bankruptcy code, the court noted that bankruptcy judges have more discretion to refuse arbitration in "core" proceedings that in "non-core" proceedings. *See id.* But, even though the adversary proceeding was "core" in this case, it refused a mechanical application of core/non-core distinction:

> However, even as to core proceedings, the bankruptcy court will not have discretion to override an arbitration agreement

> unless it finds that the proceedings are based on provisions of the Bankruptcy Code that "inherently conflict" with the Arbitration Act or that arbitration of the claim would "necessarily jeopardize" the objectives of the Bankruptcy Code. This determination requires a particularized inquiry into the nature of the claim and the facts of the specific bankruptcy.

Id. at 108.

In conducting its fact-specific analysis, the court gave three reasons why the bankruptcy court erred. First, the estate had been fully administered so the plaintiff no longer required protection of the bankruptcy code's automatic stay. In other words, resolution of the claim would have no effect on her bankruptcy estate. This seems to have been the key issue:

> [This factor distinguishes] Hill's case from cases where appellate courts have held that bankruptcy courts had discretion to refuse to stay proceedings pending arbitration. In those cases, resolution of the arbitrable claims directly implicated matters central to the purposes and policies of the Bankruptcy Code.

Id. at 110. Second, the court found that, as a purported class action, the plaintiff's claims lacked the direct connection to her own bankruptcy case that would weigh in favor of refusing to compel arbitration. Id. Finally, the court ruled that a stay is not so closely related to an injunction that the bankruptcy court is uniquely able to interpret and enforce its provisions. Id. at 110.

The facts in Hill are easily distinguishable from those present in the case at hand in the dimensions the court emphasized. First, the Plaintiff/Debtor's estate has not been fully administered. Second, this is not a class action. Thus, although *Hill* modifies the Second Circuit's approach, it is not necessarily a case whose holding would suggest that it would treat a case with facts such as those currently being presented to this Court any differently than it would be expected to under U.S. Lines, *supra*.

## F. Federal Public Policy Generally Favors, but Does Not Dictate, that Arbitration Provisions Be Enforced

Appellants, in their brief, argue that the FAA establishes a federal mandate for the enforcement of arbitration provisions. *See* Appellant's Brief, page 6-8. Neither legislative history, nor the cases cited by appellants as the foundation for such a position, actually support such a strong, and broad, pronouncement.

The FAA was enacted in 1925. Prior to its passage, it was virtually impossible for two parties with equal bargaining power to enter into a binding contract to resolve future disputes through arbitration. *See* Linda R. Hirshman, The Second Arbitration Trilogy: The Federalization of Arbitration Law, 71 Va. L. Rev. 1305 (1985). The FAA attempted to address

this issue, and to do so in a way that would apply only to parties of relatively equal bargaining power, and not as to dealings between larger parties and weaker parties, such as consumers. *See* Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 407, 409 (1967) (Black, J., dissenting) (citing Hearing on S. 4213 and S. 4214 before the Subcommittee of the Senate Committee on the Judiciary, 67th Cong., 4th Sess. 9-11 (1923)). The Court's decisions in the early cases in which it was called upon to interpret provisions of the FAA demonstrated that the Court was concerned about protecting parties from a result not intended by Congress when it enacted the FAA: that is the enforcement of arbitration provisions entered into unwittingly or non-consensually by a significantly weaker party to the contract. *See* Wilko v. Swan, 346 U.S. 427 (1953); Bernhardt v. Polygraphic Co. of America, 350 U.S. 198 (1956).

In their brief, appellants cite Moses H. Cone Memorial v. Mercury Construction Corp., 460 U.S. 1 (1983) for the proposition that the FAA establishes a federal mandate for the enforcement of arbitration provisions. *See* Appellants' Brief, page 6. While that case certainly enunciated a policy favoring arbitration, it did not go so far as to establish a general *mandate* for the enforcement of such provisions. Id. at 24. Appellants cite Johnson v. West Suburban Bank, 225 F.3d 366 (3rd Cir. (De.) 2000), cert. denied, 121 S.

Ct. 1081 (2001) when they argue that the presumption in favor of arbitration "is a powerful one". *See* Appellants' Brief, page 6. While it may be fair to make such a statement, the ruling in the Johnson case is not particularly instructive as to whether to compel arbitration in the case at hand as the relevant facts are so different. The Johnson court addressed the issue of whether a court may compel arbitration of TILA claims brought by a plaintiff seeking to bring claims on behalf of multiple claimants, and *completely outside of the bankruptcy context*. The Johnson case does not address the potential for conflict between the FAA and the Bankruptcy Code.

When appellants cite the court's statement in Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985) that the FAA requires rigorous enforcement of "agreements to arbitrate even where it may result in piecemeal litigation," Id. at 221. they fail to include the continuation of the court's statement that the court views such rigorous enforcement as necessary, "*absent a countervailing policy manifested in another federal statute*." Id. at 221 (emphasis added). Likewise the Green Tree, Buckeye, and Thompson decisions cited by appellants are not particularly instructive for the issues presented to the Court in this matter as none of those cases address the issue of applying non-bankruptcy law in an action that

fundamentally seeks the adjudication of federal bankruptcy rights. *See* Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79 (2000), Buckeye Check Cashing, Inc. v. Cardegna, Slip Opinion No. 04-1264, 546 U.S. ___ (February 21, 2006), Thompson v. Irwin Home Equity Corp., 300 F. 3d 88 (1st Cir. 2002). *See* Appellants' Brief, page 6-8.

## IV. CONCLUSION

For the foregoing reasons Plaintiff, Stephanie D. Brown, requests that this Honorable Court affirm the ruling of the Bankruptcy Court, which denied Defendants' motion to compel mediation and/or arbitration, and grant such other relief as this Court deems just and equitable.

Stephanie D. Brown

By her Attorney,

Jeffrey T. Dana (#5580)
RHODE ISLAND LEGAL SERVICES
56 Pine Street, Fourth Floor
Providence, RI 02903
(401) 274-2652 ext. 137
(401) 453-0310 FAX
jdana@rils.org

Dated: March 31, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of March, 2006, the within Appellee's Brief was served, via hand delivery upon the following interested parties as set forth below:

Charles A. Lovell, Esquire
Partridge, Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

John Boyajian, Esquire
Boyajian, Harrington & Richardson
183 Waterman Street
Providence, RI 02906

Leonard DePasquale, Esquire
Assistant U.S. Trustee
Office of the U.S. Trustee
10 Dorrance Street, Suite 910
Providence, RI 02903