# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IN RE:<br><br>STEPHANIE D. BROWN,<br>Debtor | Case No. 05-12431-ANV<br>Chapter 13 |
| STEPHANIE D. BROWN,<br>Plaintiff/Appellee,<br><br>v.<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and WELLS FARGO BANK, N.A., AS TRUSTEE OF THE AEGIS ASSET BACKED SECURITIES TRUST 2004-3,<br>Defendants/Appellants. | A.P. No. 05-01052 |

## Case No. 1:05-cv-00523-s-LDA

On Appeal by Order Granting Leave to Appeal from a
Judgment of the United States Bankruptcy Court
for the District of Rhode Island

---

## REPLY BRIEF OF DEFENDANTS-APPELLANTS

---

PARTRIDGE SNOW & HAHN LLP
Charles A. Lovell, Esq. (#4004)
180 South Main Street
Providence, RI 02903
(401) 861-8200
(401) 861-8210 FAX

# TABLE OF AUTHORITIES

## CASES

Cibro Petroleum Products, Inc. v. City of Albany (In re Winimo Realty Corp).
270 B.R. 108 (S.D.N.Y. 2001)....................7

Durango Georgia Converting, LLC v. TST Impreso, Inc. (In re Durango Georgia Paper Co.)
309 B.R. 394 (S.D. Ga. 2004)....................4, 7

Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.
712 F.2d 1149, 1159 (3rd Cir. (E.D. Pa.) 1983....................3, 7

In re Hemphill Bus Sales, Inc.
259 B.R. 865 (Bankr. E.D. Tex. 2001)....................1

Larocque v. CitiFinancial Mortgage Co.-Tx (In re Larocque)
283 B.R. 640 (Bankr. D.R.I. 2002)....................1

MBNA America Bank v. Hill
436 F.3d 104 (2nd Cir. (N.D.N.Y.) 2006)....................8

Mintze v. American General Financial Services, Inc. (In re Mintze)
434 F.3d 222 (3rd Cir. (E.D. Pa.) 2006)....................8

Pardo v. Akai Electric Co. Ltd. (In re The Singer Company)
2001 U.S. Dist. LEXIS 12902....................5, 7

Shubert v. Wellspring Media, Inc. (In re Winstar Communs, Inc.)
335 B.R. 556 (Bankr. D. Del. 2005)....................5, 7

Slipped Disc, Inc. v. CD Warehouse, Inc. (In re Slipped Disc, Inc.)
245 B.R. 342 (Bankr. N.D. Iowa 2000)....................1

Thompson v. Irwin Home Equity Corp.
300 F.3d 88 (1st Cir. (R.I.) 2002).................... 6, 8

## STATUTES

Federal Arbitration Act, 9 U.S.C. § 1, et. seq.................... 2

Truth-in-Lending Act, 15 U.S.C. § 1601, et. seq....................2

28 U.S.C. § 157(b)……………………………………………………………………………1

**OTHER MATERIALS**

Plaintiff's Brief……………………………………………………………………………2, 3-4

**REPLY BRIEF**

Now come Mortgage Electronic Registration Systems, Inc. and Wells Fargo Bank, N.A., as Trustee of the Aegis Asset Backed Securities Trust 2004-3 (the "Defendants") and hereby submit the within Reply Memorandum of Law in Response to the Brief (the "Plaintiff's Brief") of Plaintiff-Appellee, Stephanie D. Brown (the "Plaintiff"). The Defendants incorporate herein their Brief of Defendants-Appellants, previously filed, and further state as follows:

In the Plaintiff's Brief, the Plaintiff first relies heavily on the core/non-core distinction and suggests that a determination that the Adversary Proceeding is a core matter under the Bankruptcy Code dictates, as a practical matter, that the Adversary Proceeding cannot and/or should not be arbitrated. It is well-settled, however, that a determination that the matter is core is not dispositive, and even the cases cited by the Plaintiff in her brief acknowledge that the core/non-core distinction is useful but does not by any means end the discussion. See In re Hemphill Bus Sales, Inc., 259 B.R. 865, 871 (Bankr. E.D. Tex. 2001). The United States Bankruptcy Court for the District of Rhode Island has even conceded this underlying premise. See Larocque v. CitiFinancial Mortgage Co.-Tx (In re Larocque), 283 B.R. 640, 642 (Bankr. D.R.I. 2002). Judge Votolato noted that the fact that a matter was a core proceeding "strongly favored it staying in the Bankruptcy Court", but was not conclusive, as the court should consider whether a substantive bankruptcy right was impacted. See id.

In Slipped Disc, Inc. v. CD Warehouse, Inc. (In re Slipped Disc, Inc.), 245 B.R. 342, 345 (Bankr. N.D. Iowa 2000), to which the Plaintiff cites, the Court went one step further and distinguished between proceedings that are considered core proceedings under 28 U.S.C. § 157(b) and truly depend upon bankruptcy rights and proceedings that are core proceedings, but

should be treated as non-core for purposes of enforcement of an arbitration agreement because they do not expressly arise from or relate to a right which is granted by the Bankruptcy Code. The court held that where the right out of which the dispute arises can exist independently and does not depend on the Bankruptcy Code, a court would treat the matter as a non-core proceeding. Id.

That analysis goes to the very heart of the issue before this Court. The cause of action in the Plaintiff's adversary proceeding (the "Adversary Proceeding") arises out of the federal Truth-in-Lending Act, 5 U.S.C. § 1601, et. seq. ("TILA"). Even if the Plaintiff were not in bankruptcy, her cause of action could still exist—it is not dependent upon the bankruptcy but is being raised in the bankruptcy context only because the Plaintiff happens to be a bankruptcy debtor at this time.

In taking the core/non-core argument to the next level and determining whether the Adversary Proceeding invokes substantive bankruptcy rights which outweigh the interests of the Federal Arbitration Act, 9 U.S.C. § 1, *et. seq.* (the "FAA"), the Plaintiff repeatedly argues that the outcome of the Adversary Proceeding relates to the allowance or disallowance of the Defendants' claims and as such substantive bankruptcy rights are impacted which command denial of the arbitration. The Plaintiff further asserts that referring this matter to arbitration would not be consistent with the purposes of the Bankruptcy Code because the Adversary Proceeding is "inextricably tied to this Chapter 13 bankruptcy proceeding". See Plaintiff's Brief, page 15.

If this Court adopted the Plaintiff's argument, virtually no matter could ever be arbitrated in a bankruptcy context because any adversary proceeding brought in the course of a bankruptcy case will have some impact on the claims process and the administration of the

estate. This clearly is not the case, based on the number of courts which have compelled arbitration in a bankruptcy case, nor is it the intent of Congress. Indeed, Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 712 F.2d 1149, 1159 (3rd Cir. (E.D. Pa.) 1983), recognizes that an argument such as the Plaintiff's is overreaching when it states that "the mere existence of creditors in the core bankruptcy proceeding who might be indirectly affected by the arbitration decision and who were not parties to the [agreement] does not require the denial of [the motion to compel arbitration]."

The Plaintiff consistently confuses the issues before the Bankruptcy Court and/or the arbitration panel. The only issues in the Adversary Proceeding and which would be before the arbitrator are whether or not the loan made to the Plaintiff violates TILA, whether or not the Plaintiff is therefore entitled to rescind the loan, and whether or not the Plaintiff is entitled to an award of damages under TILA. While the Plaintiff does make mention of the claims process in the complaint for the Adversary Proceeding, those issues would be properly determined by the Bankruptcy Court after the TILA ruling is made. The determination of the Plaintiff's rights under TILA has absolutely no relation to bankruptcy rights, except for the sole circumstance that the Plaintiff happens to be a debtor in a bankruptcy case at this time and thus the ruling will impact a bankruptcy debtor. The matter at issue in the Adversary Proceeding will not rest or be dependent, in any way, shape or form, upon the Bankruptcy Code or rights given by the Bankruptcy Code. It will rest solely upon TILA, a federal statute that exists wholly independent of the Bankruptcy Code.

The Plaintiff asserts that the Adversary Proceeding will "impact on whether the Plaintiff will be able to retain her home and maintain payments under her proposed Chapter 13 Plan, whether her Chapter 13 Plan will be confirmed, whether the Plaintiff will obtain a fresh

start, and it will affect how creditors (not simply Defendants) will be provided for under the Plan." See Plaintiff's Brief, page 15. The outcome of the Adversary Proceeding will, in fact, impact these issues, but the Defendants are not asking the arbitrator to determine these issues, nor could they under the terms of the arbitration agreement since the arbitration provision prohibits the arbitration of substantive bankruptcy rights. See Defendants' Designation of the Record on Appeal and Statement of Issues to be Presented (the "Record"), Designation No. 3, Amended Motion of Mortgage Electronic Registration Systems, Inc. and Wells Fargo Bank, N.A., as Trustee of the Aegis Asset Backed Securities Trust 2004-3, to Compel Mediation and/or Arbitration and to Dismiss this Action or, in the Alternative, to Stay the Proceedings Pending Mediation or Arbitration (the "Motion to Compel"), Mortgage, Section 26, at Exhibit B to the Motion to Compel. Impact, without more, is an insufficient basis to deny arbitration. See Durango Georgia Converting, LLC v. TST Impreso, Inc. (In re Durango Georgia Paper Co.), 309 B.R. 394, 401 (S.D. Ga. 2004) (holding that the party seeking denial of arbitration must "point to a specific substantive bankruptcy right that will be negated or impaired if the matter is sent to arbitration") (*emphasis added*). The Defendants are not asking that an arbitrator confirm or deny the Chapter 13 plan and are certainly not requesting that the arbitrator determine whether or not the Plaintiff is entitled to a bankruptcy discharge, and thus a fresh start. The Defendants merely seek arbitration of the TILA issues, as agreed to by the Plaintiff in the loan documents.

The Plaintiffs skillfully attempt to blur the distinction between what is truly at issue in the Adversary Proceeding and what the collateral impact will be in the bankruptcy, and in doing so, avoid the precedent set in the vast majority of jurisdictions that in cases such as this, arbitration should be compelled. The Plaintiffs take a colossal leap in fact and analysis by stating that "[t]hough applicable non-bankruptcy law, such as Plaintiff's TILA claims, must be

considered. . . this action fundamentally seeks an adjudication of federal bankruptcy rights." The opposite is, in fact, true. The non-bankruptcy law, TILA, is the sole issue to be considered in the Adversary Proceeding—no federal, substantive bankruptcy rights will be adjudicated in the arbitration. In Pardo v. Akai Electric Co. Ltd. (In re The Singer Company), 2001 U.S. Dist. LEXIS 12902, the court rejected an argument virtually identical to the Plaintiff's in this matter, reasoning that because the matter was in essence a counterclaim to the proof of claim filed by the creditor, the matter was core, but because the underlying issues did not arise from rights conferred or obligations imposed by the Bankruptcy Court, they did not present an inherent conflict between the FAA and the Bankruptcy Code.

Once arbitration is completed, the Plaintiff will return to the Bankruptcy Court to determine whether, based on the outcome of the TILA claim, the Chapter 13 plan is still feasible, whether it needs to be amended, whether the Plaintiff should convert to a Chapter 7 bankruptcy case, whether relief from stay as to the Plaintiff's residence should be granted, and what distributions other creditors should receive. This all will be done through the bankruptcy Chapter 13 plan confirmation process, through motion practice, including relief from stay motions and/or motions to dismiss the Chapter 13 case, and will all be left to the Bankruptcy Court in an appropriate exercise of its jurisdiction. Again, the only issue the arbitrator will decide is whether or not the loan violated TILA and whether or not the Plaintiff is entitled to rescission and damages. Courts have explicitly condoned a process whereby narrow issues are arbitrated and then returned to the bankruptcy court for administration within the estate. See Shubert v. Wellspring Media, Inc. (In re Winstar Communs, Inc.), 335 B.R. 556 (Bankr. D. Del. 2005).

The Plaintiff argues that only the Bankruptcy Court has the special expertise needed to decide the claim because "arbitrators clearly do not have expertise in deciding issues such as the 'allowance' of claims or 'allowed secured' status or 'priority' of a claim in bankruptcy". See Plaintiff's Brief, page 18. Again, Plaintiff's allegations miss the point. The arbitrator will have no role in deciding these issues but will only decide the TILA claims, matters which are well within an arbitrator's skills and which the First Circuit has conclusively determined to be a subject matter appropriate for arbitration. See Thompson v. Irwin Home Equity Corp., 300 F.3d 88, 91 (1st Cir. (R.I.) 2002).

Moreover, whether or not the resolution of the TILA action renders the Chapter 13 plan unfeasible, and whether or not the outcome of the TILA action renders other creditors without a distribution has no place in the determination of the TILA action. TILA law, federal non-bankruptcy law, will determine the outcome of the Adversary Proceeding, and the impact of the ruling on third parties is irrelevant, as a third party neither has standing in the TILA action nor does TILA allow for consideration of a rescission action's impact on third parties in determining whether a plaintiff is entitled to rescission. Thus, Plaintiff's allegation that the Bankruptcy Court can better weigh and balance the interests of third parties and thus should retain jurisdiction over the Adversary Proceeding is immaterial. This, together with the Bankruptcy Court's statement in the transcript that "it would take probably wild horses to take this case away from the bankruptcy court", seriously calls into question whether the Defendants can actually receive an impartial and fair hearing in the Bankruptcy Court.

Finally, the Plaintiff also notes that the Bankruptcy Code provides for one forum to resolve disputes, with the goal of swift adjudication. The Plaintiff argues that the federal presumption in favor of enforcing arbitration agreements directly conflicts with the bankruptcy

goal of one centralized forum for the prompt resolution of bankruptcy disputes. The Plaintiff also claims that retention in the bankruptcy court will be efficient and expeditious, whereas arbitration is uncertain. Finally, the Plaintiff claims that any costs imposed in the arbitration forum will also impact the Chapter 13 plan.

The courts have explicitly rejected all of these arguments, and the arguments fly in the face of both existing precedent and the facts of this matter. In the recent case of In re The Singer Company, 2001 U.S. Dist. LEXIS 12902, the court explained that it is clear that Congress "did not envision all bankruptcy related matters being adjudicated in a single forum". Likewise, in In re Durango Georgia Paper Co., 309 B.R. at 401, the court rejected the plaintiff's argument that arbitration would cause undue expense and would delay resolution, on the grounds that the entire purpose of the FAA and arbitration is for the quick, efficient, and less-costly administration of claims. See also, Cibro Petroleum Products, Inc. v. City of Albany (In re Winimo Realty Corp.), 270 B.R. 109, 125 (S.D.N.Y. 2001) (rejecting argument that arbitration would interfere with expeditious administration of the estate). Moreover, factually, the arbitration agreement at issue in this matter requires the lender, or the Defendants, to pay for the first full day or arbitration, with filing fees to be paid equally. See The Record, the Mortgage, Exhibit B to the Motion to Compel. The costs to the Plaintiff are therefore minimal. See also, In re Winstar Communs, Inc., 335 B.R. 556, 556-557 (Bankr. D. Del. 2005) (holding that even if arbitration were more expensive, increased costs alone are not sufficient to deny the agreed-upon dispute resolution process).

Finally, in citing repeatedly to Hays and by circling back to the core/non-core issue, the Plaintiff argues that Hays left open the proper handling of core matters. Hays may have left that issue open because the facts at hand did not require consideration of that issue, but

subsequent courts have spoken clearly on that issue as set forth herein and in the Defendants' Brief. The clear and incontrovertible trend among the courts in numerous circuits is to enforce an arbitration agreement—even in cases in which a court may have traditionally declared the matter so intertwined with the Bankruptcy Code that arbitration should be denied.

The Plaintiff attempts to minimize the importance of recent cases by arguing that the cases of MBNA America Bank v. Hill, 436 F.3d 104 (2nd Cir. (N.D.N.Y.) 2006) and Mintze v. American General Financial Services, Inc. (In re Mintze), 434 F.3d 222 (3rd Cir. (E.D. Pa.) 2006) are aberrations, rather than the modern trend. These cases, however, invoke the same underlying principles of all of the cases relating to arbitration and rest primarily on the determination of whether arbitration would "seriously jeopardize the objectives of the Bankruptcy Code." See MBNA America Bank v. Hill, 436 F.3d at 104. Moreover, to the Defendants' knowledge, the Mintze case is the only circuit-level case which deals with TILA rescission claims in a bankruptcy context, and so squarely addresses the issue before this Court. Moreover, as the Defendants assert hereinabove, the Mintze court reiterated the common sense notion that the mere fact that the ultimate outcome of the case would have an impact on other creditors and the estate is insufficient and immaterial to the issue of arbitration. See In re Mintze, 434 F.3d 222 at 223-224. What is material is that TILA claims are based on federal statutory rights, not bankruptcy rights. Id.

Finally, the First Circuit's directive in Thompson indicates that this Circuit would follow Hill and Mintze. In Thompson, 300 F.3d at 91, the First Circuit, while not dealing explicitly with the bankruptcy issue, conclusively spoke on the issue of arbitration of TILA issues by determining that TILA litigation is "unmistakably governed by the arbitration clause."

Id. The Thompson holding, together with the overwhelming recent precedent in other jurisdictions, dictate that arbitration be compelled in this matter.

For all of the foregoing reasons and for those set forth in the Brief of Defendants-Appellants, the Defendants respectfully request that this Honorable Court overturn the ruling of the Bankruptcy Court, compel mediation and/or arbitration, and dismiss the within Adversary Proceeding or, in the alternative, stay the proceedings pending arbitration or mediation, and grant such other and further relief as this Court deems just and equitable.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AND WELLS FARGO BANK, N.A., AS TRUSTEE OF THE AEGIS ASSET BACKED SECURITIES TRUST 2004-3

By their Attorneys,

PARTRIDGE, SNOW & HAHN, LLP

Charles A. Lovell (#4004)
180 South Main Street
Providence, RI 02903
(401)861-8200/FAX(401)861-8210
cal@psh.com

Dated: April 14, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of April, 2006, the within Reply Brief was served, via hand-delivery upon the following interested parties as set forth below:

Jeffrey Dana, Esquire
RI Legal Services, Inc.
56 Pine Street, Fourth Floor
Providence, RI 02903

John Boyajian, Esquire
Boyajian, Harrington & Richardson
183 Waterman Street
Providence, RI 02906

Leonard DePasquale, Esquire
Assistant U.S. Trustee
Office of the U.S. Trustee
10 Dorrance Street, Suite 910
Providence, RI 02903

Rosa M Almeida

850824_1