UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IN RE:<br><br>STEPHANIE BROWN,<br>Debtor | Case No. 05-12431-ANV<br>Chapter 13<br><br>A.P. No. 05-01052 |
| STEPHANIE D. BROWN,<br>Plaintiff,<br><br>vs.<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and WELLS FARGO BANK, N.A., AS TRUSTEE OF THE AEGIS ASSET BACKED SECURITIES TRUST 2004-3,<br>Defendants. | C.A. No. 05-523S |

**DECISION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

Appellant Mortgage Electronic Registration Systems, Inc. and Wells Fargo Bank, N.A. ("MERS") appeal from a Bankruptcy Judge's decision in a Chapter 13 bankruptcy proceeding to deny a motion to compel an otherwise applicable arbitration clause.[1] This case squarely presents an unresolved question concerning the enforceability of arbitration agreements in the context of bankruptcy proceedings. For the reasons set forth below, the Court

[1] Both defendants are present in this appeal, however for the sake of clarity the Court refers to them, collectively, as MERS.

will affirm the Bankruptcy Court's denial of MERS' motion to compel.

I. Background

In May 2004, Appellee Stephanie Brown entered into a loan consolidation agreement with MERS in the amount of $195,000. To secure repayment of the loan, Brown granted MERS a mortgage on her home for the same amount. A little more than a year later, Brown filed a voluntary Chapter 13 bankruptcy petition in Bankruptcy Court for the District of Rhode Island. In connection with this proceeding, she sent a Truth-In-Lending Act ("TILA") rescission notice to MERS and in response MERS filed a Proof of Claim asserting a secured a claim for $211,314.66. Thereafter, Brown filed an adversary proceeding complaint against MERS and an additional defendant, Wells Fargo Bank, N.A., alleging violations of the TILA, 15 U.S.C. § 1601 et seq., that included certain disclosure failures and sought to rescind the agreement.[2]

In response to the complaint, citing the arbitration clause contained in the loan agreement, MERS filed a Motion to Compel Mediation/Arbitration, which Brown opposed. On December 7, 2005, Bankruptcy Judge Arthur N. Votolato heard argument on the Motion to

[2] Specifically, the complaint sought a declaratory judgment that: (1) the loan violated the disclosure requirements of the TILA; (2) the mortgage was void; (3) Brown was not liable for any finance charges; and (4) Brown was entitled to an award of statutory damages and costs.

Compel. That same day, Judge Votolato issued an oral decision and a one page order denying the Motion to Compel on the basis that (1) such a question (whether to compel) remained within his discretion as a Bankruptcy Judge and (2) he would exercise that discretion to retain jurisdiction over the adversary proceeding.

Defendants immediately sought leave to appeal Judge Votolato's order to this Court. After briefing and argument, this Court granted Appellants leave to appeal the order. See Brown v. Mortgage Elec. Registration Sys., Inc., No. 05-523S, 2006 U.S.Dist. LEXIS 28459, at *1 (D. R.I. April 25, 2006).

## II. Standard of Review

The parties agree that a clearly erroneous standard applies to a bankruptcy court's findings of fact and a de novo standard to its determinations of law. Casco N. Bank, N.A. v. DN Assocs. (In re DN Associates), 3 F.3d 512, 515 (1st Cir. 1993) ("In appeals of bankruptcy court holdings, we review legal determinations *de novo* and factual findings on a clearly erroneous standard.") (internal quotation marks and citation omitted). Nevertheless, which standard applies here has engendered some disagreement. MERS maintains that there are no disputes of material fact in this appeal, and therefore review of the Bankruptcy Judge's decision to deny the motion to compel is de novo. Conversely, Brown, citing MBNA America Bank, N.A. v. Hill, 436 F.3d 104, 107 (2d Cir. 2006),

contends that where, as here, the decision whether to enforce arbitration is a mixed question of law implicating a "core" proceeding, a clearly erroneous standard of review is compelled.

Reading Hill, it is easy to see how Brown might think that the only relevant standard of review is for clear error. There, the Court of Appeals for the Second Circuit recognized that "[t]he bankruptcy court's conclusions with respect to enforcement of the arbitration clause raise mixed questions of law and fact." 436 F.3d at 107. The court went on to state that "[i]f the bankruptcy court has properly considered the conflicting policies in accordance with law, we acknowledge its exercise of discretion and show due deference to its determination that arbitration will seriously jeopardize a particular core bankruptcy proceeding." Id. This formulation is, of course, correct as far as it goes; but to say that a bankruptcy court is entitled to a clearly erroneous standard of review any time it exercises its discretion is to ignore the question whether, *a priori*, the bankruptcy court had discretion in the first place. See Mintze v. American General Financial Services, Inc. (In re Mintze), 434 F.3d 222, 228 (3d Cir. 2006) ("We only review the Bankruptcy Court's decision for abuse of discretion if we first determine, under plenary review, that it had the discretion to exercise."). Indeed, this first-order question is implicit in Hill, where the court recognized that only "[i]f the bankruptcy court has properly considered the conflicting policies

in accordance with law," 436 F.3d at 107, may it then be allowed deference in its exercise of discretion. See also Gandy v. Gandy (In re Gandy), 299 F.3d 489, 494 (5th Cir. 2002) ("Whether a bankruptcy court has discretion to deny a motion to stay a bankruptcy proceeding pending arbitration is a question of law . . . ."); Cibro Petroleum Prods., Inc. v. City of Albany Port District Comm'n (In re Winimo Realty Corp.), 270 B.R. 108, 117 (Bankr. S.D.N.Y. 2001) ("The question of whether a Bankruptcy Court has discretion to decline to compel arbitration is . . . a matter of law."). Consequently, this Court reviews whether the bankruptcy court possessed discretion to deny the motion to compel de novo and then, assuming it has discretion, its exercise of that discretion will be reviewed for clear error.

## III. Discussion

### A. The Conflict between the Bankruptcy Code and the Federal Arbitration Act

The central, and sole, thrust of MERS' argument is that the bankruptcy court erred in failing to enforce the arbitration agreement against Brown. MERS contends that the bankruptcy court lacked discretion to deny enforcement of the arbitration agreement because the Federal Arbitration Act (FAA) mandates that arbitration agreements, like the one in this case, be enforced. Brown agrees that whether the bankruptcy court possessed discretion to deny the arbitration agreement is the central question, but argues that the

bankruptcy court properly concluded that it had discretion to determine the propriety of compelling arbitration. The question of whether, and when, a bankruptcy court may exercise discretion to deny enforcement of an otherwise applicable and mandatory arbitration clause is thus squarely before this Court.

The proper resolution of this question requires the Court to weigh competing statutory directives and implicates important principles regarding the relationship between the FAA, which requires enforcement of arbitration agreements, and the Bankruptcy Code, which centralizes disputes into a single forum and allows for the waiver of alternative dispute resolution fora. Courts that have addressed this issue are deeply split on both the best approach for resolving the question and the proper outcome. With respect to courts of this Circuit, the question is one of relative first impression. Compare Thompson v. Irwin Home Equity Corp., 300 F.3d 88, 91 (1st Cir. 2002), with Larocque v. CitiFinancial Mortgage Co.-Tx. (In re Larocque, II), 283 B.R. 640, 642 (Bankr. D.R.I. 2002).

Despite this uncertain terrain, however, the competing principles framing the inquiry have been thoroughly charted. On one hand, the FAA, 9 U.S.C. § 1 et seq., "was intended to reverse centuries of judicial hostility to arbitration agreements by placing arbitration agreements upon the same footing as other contracts." Shearson/American Express, Inc. v. McMahon, 482 U.S.

220, 225-26 (1987) (internal quotation marks and citation omitted). By its terms, it provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. That command finds its force in sections 3 and 4, which respectively provide that a court "must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement," and may "issue an order compelling arbitration if there has been a failure, neglect, or refusal to comply with the arbitration agreement." McMahon, 482 U.S. at 226 (internal quotation marks and citation omitted).

The Bankruptcy Code, on the other hand, offers a counter imperative. "The very purpose of bankruptcy is to modify the rights of debtors and creditors." Phillips v. Congelton, L.L.C. (In re White Mountain Mining Co., L.L.C.), 403 F.3d 164, 169 (4th Cir. 2005) (quoting 1 Collier on Bankruptcy, ¶ 3.02[2] (15th ed. rev. 2005)). In general terms, under the Bankruptcy Code, the bankruptcy court has "broad, well-established powers . . . to preserve the integrity of the reorganization process." U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. (In re U.S. Lines, Inc.), 197 F.3d 631, 640 (2d Cir. 1999). For example, section 105 of the Bankruptcy Code entitles the bankruptcy court to "issue *any* order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," id., and

one of the core goals of bankruptcy is to "centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." Id. (quoting Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.), 922 F.2d 984, 989 (2d Cir. 1990)). Consequently, and as has been oft-noted, "bankruptcy policy exerts an inexorable pull towards centralization . . . ." Societe Nationale Algerienne Pour La Recherche, La Production, Le Transport, La Transformation et La Commercialisation des Hydrocarbures v. Distrigas Corp., 80 B.R. 606, 610 (Bankr. D. Mass. 1987).

In order to resolve this "conflict of near polar extremes," id. at 610, courts have attempted to follow the approach first articulated in McMahon. There, the Supreme Court addressed a purported conflict between the FAA and the Securities Exchange Act and the Racketeer Influenced and Corrupt Organization Act (RICO). The Court reiterated the "federal policy favoring arbitration requiring . . . rigorous[] enforce[ment of] agreements to arbitrate," McMahon, 482 U.S. at 226 (quoting Moses H. Cone Mem'l Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)), and cautioned that the "duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights," because the competence of the

arbitral tribunals must be assumed, even with respect to disputes based on statutes. Id.

Recognizing, however, that such a mandate may, and at times must, "be overridden by a contrary congressional command," id., the Court formulated a disjunctive three-part test to determine when a mandate to arbitrate may be overridden: "If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent will be deducible from the statute's text or legislative history or from an inherent conflict between arbitration and the statute's underlying purposes." Id. at 227 (internal quotation marks and citation omitted).

Applying this test to the claim that the Securities Exchange Act and RICO should preclude a waiver of judicial forum, the Court concluded that Congress had not expressed such an intent, and that no inherent conflict was present, thus compelling the claims to be resolved through arbitration.

Of course, because McMahon involved a conflict between the FAA and the Securities Exchange Act and RICO, the holding is not on all fours with respect to conflicts between the FAA and the Bankruptcy Code. Indeed, a number of recent decisions addressing the effect of McMahon on conflicts between the Bankruptcy Code and the FAA have, as noted above, failed to yield a consensus.

B. In re White Mountain

In In re White Mountain, the Court of Appeals for the Fourth Circuit considered a Chapter 11 bankruptcy proceeding in which a core issue in an adversary proceeding "was also an issue in an international arbitration to be conducted in England." Phillips v. Congelton, L.L.C. (In re White Mountain Mining Co., L.L.C.), 403 F.3d 164 (4th Cir. 2005). The bankruptcy court denied a motion to compel arbitration pursuant to a mandatory arbitration clause requiring arbitration in London because the dispute was a core proceeding[3] which "presented issues that were critical to [the debtor's] ability to formulate a Plan of Reorganization." Id. at 167.

Applying the McMahon framework, the Fourth Circuit affirmed the bankruptcy court's determination. Relying on McMahon's "inherent conflict" test, the court found that "[i]n the bankruptcy setting, congressional intent to permit a bankruptcy court to enjoin arbitration is sufficiently clear to override even international arbitration agreements." Id. at 168 (quoting In re United States Lines, Inc., 197 F.3d at 639). The court reached this conclusion by first recognizing that "[t]he very purpose of bankruptcy is to modify the rights of debtors and creditors," and that "Congress intended to centralize disputes about a debtor's assets and legal obligations in the bankruptcy courts." Id. at

---

[3] The creditor had sought a determination that he was owed money by the debtor.

169. Contrasting this with arbitration, the court reasoned that "permitting an arbitrator to decide a core issue" would frustrate the goal of bankruptcy to centralize decision-making. Id. Because centralization of disputes was "especially critical" in Chapter 11 cases,[4] and in order for the reorganization to proceed as efficiently as possible, "unimpeded by uncoordinated proceedings in other arenas," to require arbitration would inherently conflict with the Bankruptcy Code. Id. at 170 (internal quotation marks and citation omitted).

Thus, In re White Mountain stands for the proposition that where the subject of both the arbitration and the bankruptcy adversary proceeding is a core proceeding, and where enforcement of the arbitration agreement would frustrate the efficient procession of the bankruptcy case, McMahon's "inherent conflict" prong will be met, thereby conferring discretion to the bankruptcy judge to determine whether to compel arbitration.

C. In re Mintze

When faced with a similar question in Mintze v. American General Financial Services, Inc. (In re Mintze), 434 F.3d 222 (3d

---

[4] For the White Mountain court, this was the case because the central goal of Chapter 11 is rehabilitation of the debtor, guarding against the possibility that the debtor will be forced to liquidate "with an attendant loss of jobs and possible misuse of economic resources." Id. at 170. But it is not inherently clear why centralization of Chapter 11 proceedings is any more, or less critical than other bankruptcy proceedings. See Hill, 436 F.3d at 104 (Chapter 7); Lewallen v. Green Tree Servicing, L.L.C. (In re Lewallen), 343 B.R. 225 (Bankr. W.D. Mo. 2006) (Chapter 13).

Cir. 2006), the Court of Appeals for the Third Circuit adopted a different approach.[5] Instead of determining whether the core proceeding was at issue in both the adversary proceeding and the arbitration, or whether enforcement of the arbitration would frustrate the centralization and efficiency goals of a Chapter 13 bankruptcy proceeding as prescribed by the Bankruptcy Code (the approach adopted in In re White Mountain), the court charted a different course, taking its cue from what it saw as a misreading (by the In re White Mountain court) of McMahon.

Agreeing with the bankruptcy court that the dispute was core, the Third Circuit nonetheless disagreed that this was a material factor in the analysis of whether an inherent conflict existed. In re Mintze, 434 F.3d at 229 ("The core/non-core distinction does not, however, affect whether a bankruptcy court has the discretion to deny enforcement of an arbitration agreement."). Instead, the court instructed that "nonenforcement of an otherwise applicable arbitration provision turns on the underlying nature of the proceedings, i.e., whether the proceeding derives exclusively from the provisions of the Bankruptcy Code and, if so, whether the

---

[5] The issue in In re Mintze involved a conflict in a Chapter 13 proceeding. The dispute centered on an adversary proceeding triggered by a debtor's claim for rescission of a mortgage under the TILA. In re Mintze, 434 F.3d at 222. The mortgage also contained a mandatory arbitration clause, which the creditor sought to enforce. Id. After concluding that the matter was a valid core proceeding, the bankruptcy court denied the creditor's motion to compel arbitration. Id.

arbitration proceeding would conflict with the purposes of the Code." Id. at 231 (quoting Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum), 118 F.3d 1056, 1067 (5th Cir. 1997)).

The court declined to find an inherent conflict between the FAA and the Bankruptcy Code centrally because, in light of McMahon and Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149 (3d Cir. 1989), in order for an inherent conflict to exist, "congressional intent to preclude a waiver of judicial remedies [must be] for the statutory rights at issue." In re Mintze, 434 F.3d at 231. Thus, because the "statutory claims" raised by the debtor arose from TILA rather than from any statutory right created by the Bankruptcy Code, there could be no inherent conflict between the Bankruptcy Code and the FAA.[6]

Finally, the court also inquired into whether, if arbitration were enforced, it would have a substantial impact on the debtor's bankruptcy proceeding. Because the debtor initiated the claim as an adversary proceeding in her bankruptcy case, the court, in somewhat conclusory fashion, determined that there would be no

---

[6] According to the court, "Mintze [] failed to raise any statutory claims that were created by the Bankruptcy Code," and therefore there was "no bankruptcy issue to be decided by the Bankruptcy Court . . . ." Id. at 231. For support of this proposition, the court relied on McMahon's statement that its inherent conflict prong requires congressional intent "to preclude a waiver of judicial remedies for the statutory rights at issue." McMahon, 482 U.S. at 227.

"sufficiently adverse" effect on the underlying purposes of the Bankruptcy Code.[7] Id. at 232.

Based upon these two conclusions that: (1) there was no congressional intent to preclude a waiver of judicial remedies because no Bankruptcy Code-based statutory rights were at issue; and (2) enforcement of arbitration would not adversely effect the underlying purposes of the Bankruptcy Code, the Court concluded that the bankruptcy court had no discretion to deny enforcement of the arbitration provision in the contract.[8]

D. Hill

One week after In re Mintze, the Court of Appeals for the Second Circuit, in MBNA America Bank, N.A. v. Hill, 436 F.3d 104, 107 (2d Cir. 2006), was presented with the issue, albeit in a slightly different context. In Hill, a debtor initiated and completed a Chapter 7 bankruptcy proceeding. Id. at 106. After the proceeding was finished, she filed an adversary proceeding, styled as a putative class action, based on certain events that had

---

[7] The bankruptcy court had concluded that the outcome of the debtor's action would affect her Chapter 13 plan and the distribution her creditor's would receive. For a critique of the Third Circuit's conclusion, see Merrill v. MBNA America Bank, N.A. (In re Merrill), 343 B.R. 1, 11 (Bankr. D. Me. 2006) ("The [conclusion] is arguably a somewhat strained interpretation of 'bankruptcy issue' given the context of the ongoing Chapter 13 plan.").

[8] Even though the court appeared to follow a two-part inquiry, it is not at all clear how these parts relate to each other. Are they conjunctive, disjunctive or merely equal factors in determining whether an inherent conflict exists?

occurred during her bankruptcy proceeding.[9] Id. Because the adversary proceeding involved an agreement to authorize funds that contained a mandatory arbitration agreement, MBNA sought to enforce arbitration and stay the bankruptcy proceeding. Id. The bankruptcy court denied the motion to compel arbitration and the district court affirmed. Id. at 107.

On appeal, the Second Circuit declined to follow either In re White Mountain or In re Mintze, instead requiring a more incisive inquiry into the origin of the claims in conflict. Recognizing that "[b]ankruptcy courts are more likely to have discretion to refuse to compel arbitration of core bankruptcy matters," because they "implicate more pressing bankruptcy concerns," the court nonetheless refused to establish a bright line rule that core bankruptcy matters will always confer such discretion. Id. at 108. Instead, the court cautioned that even where a core bankruptcy proceeding is involved, the proceeding must: (1) be based on a provision of the Bankruptcy Code that inherently conflicts with the FAA; or (2) be one in which arbitration of the claim would "necessarily jeopardize" the objectives of the Bankruptcy Code, in

[9] Specifically, Hill (the debtor) had authorized MBNA to withdraw monthly payments from her bank account. MBNA failed to stop these payments when Hill's bankruptcy proceeding commenced, thus violating the automatic stay imposed on Hill's estate. See Hill, 436 F.3d at 106.

order to trump an otherwise mandatory arbitration agreement.[10] Id. at 108. Fleshing this approach out, the court stated:

> [t]his determination requires a particularized inquiry into the nature of the claim and the facts of the specific bankruptcy. The objectives of the Bankruptcy Code relevant to this inquiry include the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders. If a severe conflict is found, then the court can properly conclude that, with respect to the particular Code provision involved, Congress intended to override the Arbitration Act's general policy favoring the enforcement of arbitration agreements.

Id. at 108 (emphasis added) (internal citations and quotations omitted).

Applying this framework to the specific dispute, the court noted that the adverse proceeding was a core proceeding that derived from a statutory right found in the Bankruptcy Code.[11] However, the court went on to address whether the specific

---

[10] Conceptually, this framework appears to employ a disjunctive two-pronged approach, looking first to whether a substantive bankruptcy right was implicated *and* whether it inherently conflicts with the FAA, and then asking whether arbitration would seriously jeopardize the objectives of the Bankruptcy Code. Apparently, according to the language of Hill, this inquiry is framed in the alternative, allowing for either prong to be dispositive. See id. ("[T]he bankruptcy court will not have discretion to override an arbitration agreement unless it finds that the proceedings are based on provisions of the Bankruptcy Code that 'inherently conflict' with the [FAA] or that arbitration . . . would 'necessarily jeopardize' the objectives of the Bankruptcy Code.").

[11] Specifically, the debtor had brought a claim that MBNA had violated the automatic stay provision under § 362(h) of the Bankruptcy Code.

provision of the Bankruptcy Code, the automatic stay, inherently conflicted with the FAA. Answering this question in the negative, the court held that arbitration would not seriously jeopardize the objectives of the Bankruptcy Code because (1) the debtor's estate had already been fully administered; (2) the claim was styled as a putative class action, thereby lacking the direct connection to the actual estate; and (3) a stay "is not so closely related to an injunction that the bankruptcy court is uniquely able to interpret and enforce its provisions." Id. at 109.[12] Consequently, it found that the bankruptcy court did not have discretion to deny the motion to stay or dismiss the proceeding in favor of arbitration.

---

[12] It should be noted that this conclusion conflates what were seemingly two distinct inquiries ((1)whether the proceeding is based on a provision of the Bankruptcy Code that inherently conflicts with the FAA; and (2) whether arbitration of the claim would "necessarily jeopardize" the objectives of the Bankruptcy Code). Hill, 436 F.3d at 108. The court answered the question whether the statutory provision of the Bankruptcy Code inherently conflicted with the FAA with the response that arbitration would not seriously jeopardize the objectives of the Bankruptcy Code, partially collapsing the answer to the second question into the answer to the first.

Nevertheless, what is clear from Hill is that in the Second Circuit even a substantive bankruptcy right will not automatically confer discretion onto a bankruptcy judge to deny a motion to compel arbitration. Instead, where a claim invokes a substantive bankruptcy right, it must also inherently conflict with the FAA, which may mean, among other things, the same thing as asking whether arbitration seriously jeopardizes the objectives of the Bankruptcy Code. But because the court in Hill framed the inquiry in the disjunctive, see id. at 108, whether the objectives of the Bankruptcy Code could be seriously jeopardized, even where no substantive bankruptcy right was implicated, and whether this could confer discretion appears to be an open, and possibly important, question.

E. Reconciling McMahon with its Progeny

If there is one consistency among these three cases, it is their effort to follow, at least in form, the dictates of McMahon. All three apply McMahon's "inherent conflict" prong to determine whether the bankruptcy matter and the underlying purposes of the Bankruptcy Code irreconcilably conflict with arbitration. Moreover, each looks to what kind of dispute is at issue and how arbitration of the dispute will affect the objectives of the Bankruptcy Code and the FAA.

In In re White Mountain, the court determined that because the bankruptcy matter was a core proceeding, and because core proceedings implicated the essential purpose of the Bankruptcy Code - to centralize all relevant disputes in one forum - an inherent conflict existed with respect the arbitration clause. In In re Mintze, the court followed the same approach but determined that because the core proceeding did not invoke a substantive right established by the Bankruptcy Code and resolution of the arbitration dispute would not adversely effect the bankruptcy proceeding, no inherent conflict existed. And in Hill, the court concluded that the dispute was a core proceeding that invoked a substantive right under the Bankruptcy Code but that its resolution in an arbitral forum would not seriously jeopardize the underlying objectives of the Bankruptcy Code and, therefore, no inherent conflict was present.

Despite employing the same general approach for resolving the conflict, the three post-McMahon cases reach widely-divergent conclusions both with respect to what qualifies as an "inherent conflict," and what constitutes "interference" in the administration of a bankruptcy estate. These differences lead to equally divergent outcomes concerning the existence of a bankruptcy judge's discretion to deny or compel a motion to arbitrate.

One explanation for this result may be the lack of guidance McMahon offers for resolving conflicts outside the narrow confines of the Exchange Act or RICO. However, the divergent outcomes found in these decisions may also be explained, more fundamentally, by a misperception of the nature of arbitration agreements and the function of the FAA in enforcing such agreements.

Arbitration agreements are "privately negotiated agreements," Volt Info. Scis. v. Bd. of Trustees, 489 U.S. 468, 478 (1989), that specify "not only the situs of suit but also the procedure to be used in resolving the dispute." Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 (1974). They have thus been alternately described as "contractual choice-of-forum provisions," Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 615 (1985), and "a specialized kind of forum-selection clause." Scherk, 417 U.S. at 519, and are, consequently, no different in form than other freely negotiated contractual provisions that circumscribe rights to be enforced by their terms. See Volt, 489 U.S. at 477-78; see also

Hays, 885 F.2d at 1162 ("[W]e do not see any relevant distinction between a forum selection clause and an arbitration clause."); but see Diaz Contracting, Inc. v. Nanco Contracting Corp. (In re Diaz Contracting, Inc.), 817 F.2d 1047, 1054 (3d Cir. 1987) (distinguishing the principles governing the enforceability of arbitration clauses from the principles governing enforcement of contractual forum selection clauses). Arbitration under the FAA is, therefore, "a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit." Action Indus., Inc. v. U.S. Fidelity & Guar. Co., 358 F.3d 337, 340 (5th Cir. 2004) (quoting Volt, 489 U.S. at 477). Conceptually, then, arbitration agreements operate with no more, or less, force than any other privately agreed upon contractual provisions - which is to say merely that they are to be enforced according to their terms. Volt, 489 U.S. at 477-78.

This understanding of arbitration agreements squares with the inscribed intent of the FAA "to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate," and "to place such agreements upon the same footing as other contracts," Volt, 489 U.S. at 478 (internal citations and quotations omitted), and explains the number of decisions to reject the automatic and absolute enforcement of arbitration agreements under the FAA. See Buckeye Check Cashing, Inc. v. Cardegna, 126 S. Ct. 1204, 1211 (2006) (noting that challenges to an arbitration clause itself may

be considered by a judicial body); Volt, 489 U.S. at 479; Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n.12 (1967); Double TRL, Inc. v. F.S. Leasing, Inc. (In re Double TRL, Inc.), 65 B.R. 993 (Bankr. E.D.N.Y. 1986). The FAA thus "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." Volt, 489 U.S. at 478.

McMahon must be read within this framework. And it is this understanding that should guide courts in determining the proper approach for resolving conflicts between the Bankruptcy Code and the FAA. Consequently, where an approach for resolving conflicts between the FAA and another, competing statutory command results in the elevation of arbitration agreements over and above other forms of contract, it simply cannot not be reconciled with, and would actually do violence to, the strong and compelling prescriptions of the FAA "to make arbitration agreements as enforceable as other contracts, but not more so." Prima Paint, 388 U.S. at 404 n.12.

In this regard, the approach taken by In re Mintze and Hill undermines the well-settled intent of the FAA to place arbitration agreements on the same footing as other contracts and elevates arbitration agreements over and above other analogous forum selection agreements. Both cases rejected the core/non-core standard, preferring instead to hinge nonenforcement of an otherwise applicable arbitration provision on "whether the

proceeding derives exclusively from the provisions of the Bankruptcy Code and, if so, whether the arbitration proceeding would conflict with the purposes of the Code." In re Mintze, 434 F.3d at 231 (quoting In re Nat'l Gypsum, 118 F.3d at 1067).[13] To be clear, such a standard entirely withdraws the discretion of bankruptcy judges to deny a motion to compel arbitration unless, inter alia, the proceeding invokes a substantive right of the Bankruptcy Code.[14] See In re Merrill, 343 B.R. at 11 (reading In re Mintze to hold that "no discretion exists until the McMahon evidence of congressional intent-to-preclude test (as shown by 'inherent conflict' or statutory text or legislative history) is met"). In order to be consistent with the mandate of the FAA, then, this approach should comport with the approach taken with similarly situated non-arbitration agreements in the bankruptcy context. As detailed below, it does not.

Normally, where a contract proceeding is determined to be core, a bankruptcy judge has the authority to adjudicate the proceeding, precisely because such proceedings often involve "[f]ixing the order of priority of creditor claims against a

---

[13] Although the Second Circuit in Hill ultimately settled on this standard, the court noted that "[b]ankruptcy courts are more likely to have discretion to refuse to compel arbitration of core bankruptcy matters, which implicate more pressing bankruptcy concerns." 436 F.3d at 108 (internal quotations omitted).

[14] Both courts also inquired whether enforcement of arbitration would have a sufficiently adverse effect on the underlying purposes of the Bankruptcy Code. Hill, 436 F.3d at 108; In re Mintze, 434 F.3d at 231.

debtor, . . . plac[ing] the property of the bankrupt, wherever found, under the control of the court, for equal distribution among the creditors, and administering all property in the bankrupt's possession." In re U.S. Lines, Inc., 197 F.3d at 637 (internal citations and quotations omitted). The bankruptcy court maintains such authority even in the face of an objection by one of the parties, or an attempt by one of the parties to compel adjudication of the core contract proceeding by an article III court or, for that matter, a state court. See S.G. Phillips Constructors, Inc. v. City of Burlington, Vermont (In re S.G. Phillips Constructors, Inc.), 45 F.3d 702, 707 (2d Cir. 1995) (finding that because the contract dispute was a core proceeding, the bankruptcy court maintained authority over the dispute even under an attempt to compel the issue to be resolved by a state court).

However, the presence of a forum selection clause complicates a bankruptcy court's jurisdiction to adjudicate core contract claims. In M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, (1972), the Supreme Court established the test to be used in determining whether to enforce forum selection clauses. The Court held that forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." Id. at 10. Expanding on this statement, the Court required the resisting party to demonstrate that (1) the clause was invalid for such reasons as

fraud or overreaching, or (2) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought, or (3) that enforcement of the clause would be so gravely difficult and inconvenient as to be unreasonable and unjust and that it would deprive the party of its day in court. Id. at 10, 15, 18.

Like McMahon, however, resolution of the forum selection dispute in M/S Bremen arose outside the bankruptcy context.[15] Thus, with respect to the force of forum selection clauses in bankruptcy proceedings, courts have been left to interpret the appropriate application of M/S Bremen test.[16] In this regard, courts have uniformly found that forum selection clauses in core contract proceedings are not automatically enforceable because such enforcement would undermine the goal of centralizing bankruptcy proceedings. See N. Parent, Inc., v. Cotter & Co. (In re N. Parent, Inc.), 221 B.R. 609, 622 (Bankr. D. Mass. 1998) (collecting cases and holding that "[r]etaining core proceedings in this Court, in spite of a valid forum selection clause, promotes the well-defined policy goals of centralizing all bankruptcy matters in a specialized forum to ensure the expeditious reorganization of debtors"); see also Iridium Operating LLC v. Motorola Inc. (In re

[15] In M/S Bremen, the dispute arose under admiralty and maritime law.

[16] It is well-settled that M/S Bremen standard is applicable in bankruptcy proceedings. Coastal Steel, 709 F.2d at 202.

Iridium Operating LLC), 285 B.R. 822, 837 (Bankr. S.D.N.Y. 2002) (holding that "although there is a strong policy favoring the enforcement of forum selection clauses . . . this policy is not so strong as to mandate that forum selection clauses be adhered to where the dispute is core"); Breeden v. The Aegis Consumer Funding Group Inc. (In re Bennett Funding Group, Inc.), 259 B.R. 243, 252 (Bankr. N.D.N.Y. 2001) ("Transferring a core matter that is not 'inextricably intertwined' with non-core matters adversely impacts the strong public policy interest in centralizing all core matters in the bankruptcy court.").[17] Implicit in these holdings is the recognition that the policies underlying forum selection clauses may conflict with the policies underlying core bankruptcy proceedings. See In re Iridium Operating LLC, 285 B.R. at 837.

Given the foregoing, of the three post-McMahon cases, the approach adopted in In re White Mountain best applies the above

[17] Some courts have determined that forum selection clauses are "presumptively valid," at least where the third prong of The Bremen test is concerned; however this line of cases has never expressly ratified such a position where the proceeding is core - and this court is unable to unearth any case so holding - strongly suggesting that the appropriate distinction for enforcement of forum selection clauses is whether the proceeding is core or non-core. See Diaz, 817 F.2d at 1051 (allowing that if the proceeding were core and not inextricably intertwined with non-core proceedings, the second prong of M/S Bremen could be met); Coastal Steel, 709 F.2d at 202 (concluding that the public policy second prong of M/S Bremen test does not allow a bankruptcy court to automatically deny enforcement of a forum selection clause for non-core proceedings because "[a]t best the grant of protective federal jurisdiction over proceedings related to title 11 is one circumstance to be taken into account in making the unreasonableness determination").

framework for guiding inquiries into the effect and operation of arbitration agreements in the bankruptcy context.[18] There, as noted, the Fourth Circuit concluded that where a conflict exists between the Bankruptcy Code and the FAA, a bankruptcy court retains discretion to decide whether and when to compel arbitration if the at-issue proceeding is core. In re White Mountain, 403 F.3d at 169. The "core/non-core" distinction represents the best approach for resolving conflicts between the FAA and the Bankruptcy Code because it locates arbitration agreements precisely upon the same footing as other forms of contracts, see Volt, 489 U.S. at 478, while at the same time heeding McMahon's dictate that a waiver of judicial forum may only be prohibited where, inter alia, an inherent conflict is present between arbitration and the conflicting statute's underlying purpose. McMahon, 482 U.S. at 227.

There is no evidence to suggest that the presence of an arbitration clause, as opposed to a standard forum selection clause, in a core contract proceeding should change the jurisdictional posture of that proceeding. Indeed, to require a different standard, as was countenanced in Hill and In re Mintze,

[18] Although this court agrees with the In re White Mountain approach that the core/non-core distinction is determinative, this court does not mean to implicitly ratify the entirety of In re White Mountain's rationale. Indeed, In re White Mountain neglected to consider the framework discussed above. Nevertheless, the standard articulated in In re White Mountain is consistent with that framework.

would seem to present an irreconcilable conflict with the fundamental precepts of the FAA. Principal to accurately situating the FAA and arbitration within the framework established by McMahon is a recognition that, contrary to the holding in In re Mintze, the most parsimonious understanding of arbitration's position as a dispute resolution forum is that it exists as equal to and commensurate with other dispute resolution tribunals. Thus, even with the presence of an arbitration clause, resolution of the dispute in bankruptcy court, so long as it is a core proceeding, complies with the intent of the FAA by situating arbitration in exactly the same place as other forum selection clauses. Consequently, in order to harmonize arbitration agreements with their traditional contractual counterparts, forum selection clauses, a bankruptcy court must maintain authority to exercise discretion concerning whether to enforce arbitration over core contract proceedings even where those contracts possess an arbitration agreement.

IV. Conclusion

Having determined that the bankruptcy judge had discretion to determine whether to compel arbitration, the court must now decide whether the bankruptcy judge's exercise of that discretion was sound. Upon review, this court concludes that it was. Here, the bankruptcy court was presented with a motion to compel arbitration

of Brown's adversary claim to enforce a pre-petition rescission of her mortgage under the TILA. The bankruptcy court concluded that the outcome of the action would clearly affect Brown's Chapter 13 plan and the distribution her creditor's would receive. This determination is not clearly erroneous. The bankruptcy court properly found that compelling arbitration in this case would be inconsistent with the purpose of the bankruptcy laws to centralize disputes about a debtor's legal obligations so that reorganization can proceed efficiently. As noted earlier, this proceeding occurred pre-petition and directly implicates the reorganization process. Thus, the bankruptcy court "properly considered the conflicting policies in accordance with law," In re U.S. Lines, Inc., 197 F.3d at 641, and its decision to deny the motion to compel cannot be said to have been an abuse of discretion. The bankruptcy court's denial of the motion to compel arbitration is AFFIRMED.

ENTER:

William E. Smith
United States District Judge
Date: 11/17/06